## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    BKY Case No.: 24-60191
                                                                        Chapter 11

LifeBack Law Firm, P.A.,

                        Debtor.

## VERIFIED NOTICE OF HEARING AND MOTION FOR REMOVAL OF DEBTOR IN POSSESSION AND OTHER RELIEF

TO:    THE DEBTOR AND OTHER ENTITIES SPECIFIED IN THE APPLICABLE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND LOCAL RULE 9013-2.

1.      William Kain and Margaret Henehan ("**Kain & Henehan**"), by and through their undersigned counsel, hereby move the Court for the relief requested below and give notice of hearing.

2.      The Court will hold a hearing on this motion at 10:00 a.m. on Wednesday, May 29, 2024 before the Honorable Michael E. Ridgway in Courtroom No. 7 West, at the United States Courthouse, at 300 South Fourth Street, in Minneapolis, MN  55415, or as soon thereafter as counsel may be heard.

3.      Any response to this motion must be filed and served not later than Wednesday, May 22, 2024, which is seven (7) days before the time set for the hearing (including Saturdays, Sundays and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bankr. P. 5005 and Local Rules 1070-1 and 1073-1.  This proceeding is a core proceeding.

5.      This bankruptcy case was commenced on April 28, 2024 by the filing of a voluntary Subchapter V Chapter 11 petition. The case is now pending in this Court.

6.      This motion arises under 11 U.S.C. § 1185. Kain & Henehan seek to have the Debtor removed as a debtor in possession due to its control by, and the actions of, Wesley Scott ("**Scott**"), President of the Debtor.  [Doc. 1, p. 6].

## BACKGROUND

7.      The Debtor acknowledges that it was formerly known as Kain & Scott, P.A. ("**Kain & Scott**") [Doc 1, p.1].   Prior to April 15, 2021, the ownership of Kain & Scott was Scott (50%), Kain (30%), Henehan (10%) and Kelsey Quarberg (10%).  (Kain, Henehan and Kelsey Quarberg shall be referred to, collectively, as "**KHQ**").

8.      The week of April 12, 2021 set into motion the end of Kain & Scott. On April 13, 2021, Scott asked Elizabeth Lopau ("**Lopau**"), the Operations Manager, to fire two employees in the Brainerd office whom Scott believed were racist because of their political social media posts. Lopau refused to do so, and Scott requested Lopau's resignation, and she accepted. On April 7, 2021 Scott sent an all firm email outlining that diversity training would be implemented in the second quarter of the year. In addition, Debtor was developing a social media policy for the firm's employee handbook. Scott then fired one of the employees, but the other continued to be employed by the Debtor.

9.      On April 13, 2021 Scott also sent an email to all firm attorneys stating that the insurrectionists on January 6th should 'have been shot on the spot' and have their assets given to black Americans as reparations.

10.     KHQ told Scott on April 14, 2021 that he should have consulted with them before taking these actions, that the firm's employees were upset by losing Elizabeth Lopau (who had celebrated her 9 year anniversary with the firm on April 12, 2021), and that his emails and behavior that day were inappropriate. The meeting ended and Scott followed it with an email to KHQ

2

indicating his intent to resign and outlining his departure. In the email Scott outlined his "desire to exit the firm" and that he would "acquiesce to whatever guidance you give me before departure." Scott left the firm and enabled his "out of office" status on his email.

11.     The next day, however, Scott returned to work where KHQ told Scott that they had accepted his resignation. Instead of proceeding with that plan, Scott stated that he had not actually quit and proceeded to "fire" each KHQ on April 15, 2021. Scott changed the physical locks at all business locations (5) and locked KHQ out of the firm's technology by changing passwords to all of their devices and email.

12.     Scott terminated the employment of KHQ when he did not have the corporate authority to do so as a 50% owner. This was a violation of the shareholders' buy-sell agreement. Under that agreement, Scott then had a 30-day window to pay the other shareholders for their interests.  He did not.  To this day, interest is still accruing on the amounts owed to Kain and Henehan.[1] The amount owed to Kain and Henehan is approximately $577,000.00, without interest.

13.     Scott acted with no regard for what was in the best interest of the Debtor in April 2021. KHQ were the three highest grossing billers at the firm at the time with each generating over $750,000.00 in revenue per year. Scott breached his fiduciary duty to the shareholders and acted with complete disregard for what was best for the Debtor.

14.     Almost 300 clients chose to leave the Debtor and continued to work with KHQ at their new firms. The combination of the lost future revenue and the loss in clients was a financial death sentence to the Debtor and was completely Scott's fault. Further, Scott put no thought into how he and the Debtor could afford to buy out the interests of the 50% ownership of KHQ under

---

[1] Quarberg settled with Scott.

the buy-sell agreement, which was valued at over $732,000.00 at the time based on a recent share valuation completed by the four shareholders.

15.     Scott also did not consider that he would have to change the name of the firm due to firing the first-named partner. This caused a large expense in replacing signage at five locations, ordering all new letterhead/envelopes and redesigning the firm's website. In September of 2022, over a year after the termination of KHQ, the Debtor's Eagan location continued to display signage of "Kain & Scott" with no signage showing the name change.

16.     In 2022, the Debtor's website continued to display photos of William Kain, despite repeated requests to change signage and remove photos and likeness.  Scott, to this day, utilizes the firm's former name of Kain & Scott in advertising such as this YouTube video - https://www.youtube.com/watch?v=afdDPUShuOE.   References to Kain are still found on the Debtor's website, as well.

17.     Scott called the police on Quarberg and Kain on April 15, 2021 and told the 911 dispatch that he was "afraid for his life."  Quarberg recorded the incident and the footage showed Scott was drinking coffee and had his feet casually propped on his desk while leaning back in his chair. He told police that Quarberg was trespassing and that he wanted her removed. The police found that as a shareholder of the business, Quarberg was not trespassing.

18.     The staff issues caused by Scott resulted in negative national press such as the article attached hereto as **Exhibit A** from the New York Post.

19.     After termination, KHQ were unable to communicate with their clients as they did not have access to contact information. They were also unable to get into their individual Pacer accounts because Scott would not furnish the passwords and had disabled their accounts. KHQ had no way of knowing who they represented or how to contact them. Clients that called Kain &

4

Scott that first week were told that KHQ no longer worked for the Debtor and that there was no way to contact KHQ.

20.     Scott then lied to Debtor's insurer, HealthPartners, regarding Cobra coverage for what appears to be the purpose of placing further hardship upon KHQ.  Scott denied the Cobra benefits for each KHQ as he told HealthPartners that KHQ were ineligible because of gross misconduct. At the time under the Cares Act, this would not have been an expense for the Debtor. KHQ pushed back to reconsider, and Scott stated he would not "defraud the US government."  For a period of time, KHQ did not have health insurance coverage solely due to the actions of Scott.

21.     Scott has denied shareholders the right to the Debtor's books.  KHQ have only seen one profit and loss statement or balance sheet in the three years since their wrongful termination. Kain still owns 30% and Henehan owns 10%.  (Quarberg sold her 10% shares back to Scott in December of 2022 by way of a settlement agreement.) In August 2021, KHQ were furnished a profit and loss sheet and a balance sheet, along with some weekly meeting minutes. Since August of 2021, Kain and Henehan have repeatedly requested this information. Kain and Henehan, while still equity holders, have no knowledge of the Debtor's finances.

22.     Scott utilized the entirety of a $100,000.00 credit line with Bremer Bank ("**Bremer**") which had no balance due before Scott took full control of managing the Debtor in April of 2021. Previous to the termination of KHQ, the four owners agreed to use the line of credit only upon group consent.  Kain had personally guaranteed the debt and had no knowledge that it was maxed out and in default until hearing from a lawyer on behalf of Bremer in January 2022.

23.     Multiple litigation matters ensued in state court – all of which are to the detriment of the Debtor.  These include the following:

5

Case Number: 27-CO-24-2105
Date Filed: 03/01/2024
Case Title: John David Bisset, Robin Rose Bisset vs Life Back Law Firm P.A., Wesley W Scott
Case Type: Conciliation
Case Location: Hennepin County, Hennepin Civil
Case Status: Open

Case Number: 27-CV-23-17025
Date Filed: 11/03/2023
Case Title: LifeBack Law Firm, P.A. and Wesley Scott vs Kelsey B. Quarberg
Case Type: Employment
Case Location: Hennepin County, Hennepin Civil
Judicial Officer: Sande, Christian M
Case Status: Dormant

Case Number: 27-CV-23-17037
Date Filed: 11/03/2023
Case Title: LifeBack Law Firm, P.A. and Wesley Scott vs Margaret R. Henehan, Willaim P.
Kain, Anthony N. Shelton, and Kain + Henehan LLC.
Case Type: Employment
Case Location: Hennepin County, Hennepin Civil
Judicial Officer: Conley, Thomas J.
Case Status: Open

Case Number: 18-CV-23-3916
Date Filed: 10/31/2023
Case Title: Bremer Bank, N.A. vs Thirteen-Seventh, LLP, Wesley Scott, William Kain,
LifeBack Law Firm, P.A.
Case Type: Civil Other/Misc./Civil Other Miscellaneous
Case Location: Crow Wing County
Judicial Officer: DeMay, Kristine R.
Case Status: Closed

Case Number: 19HA-CV-23-4690
Date Filed: 10/31/2023
Case Title: Bremer Bank, N.A. vs Thirteen-Seventh, LLP, Wesley Scott, William Kain,
LifeBack Law Firm, P.A. f/k/a Kain & Scott, P.A.
Case Type: Civil Other/Misc./Civil Other Miscellaneous
Case Location: Dakota County, Dakota, Hastings - Non - Criminal
Case Status: Closed

Case Number: 27-CV-23-16841
Date Filed: 10/31/2023
Case Title: Bremer Bank, N.A. vs THIRTEEN-SEVENTH, LLP, Wesley Scott, William Kain,
LifeBack Law Firm, P.A. f/k/a Kain & Scott, P.A.
Case Type: Civil Other/Misc./Civil Other Miscellaneous

Case Location: Hennepin County, Hennepin Civil
Judicial Officer: Wahl, Edward Thomas
Case Status: Closed

Case Number: 73-CV-23-8568
Date Filed: 10/31/2023
Case Title: LifeBack Law Firm, P.A., Thirteen-Seventh, LLP, Wesley Scott vs Bremer Bank,
National Association
Case Type: Contract
Case Location: Stearns County
Judicial Officer: Moehrle, Laura
Case Status: Closed

Case Number: 27-CV-23-16445
Date Filed: 10/23/2023
Case Title: LifeBack Law Firm, P.A. and Wesley Scott vs Timothy P. Tonga and Danielle Q. Lin
Case Type: Employment
Case Location: Hennepin County, Hennepin Civil
Judicial Officer: Wahl, Edward Thomas
Case Status: Closed

Case Number: 27-CV-23-12137
Date Filed: 07/31/2023
Case Title: Hoglund, Chwialkowski & Mrozik, P.L.L.C., n/k/a/ Hoglund & Mrozik, P.L.L.C vs
Kain & Scott, P.A., n/k/a LifeBack Law Firm, P.A.,
Case Type: Civil Other/Misc./Civil Other Miscellaneous
Case Location: Hennepin County, Hennepin Civil
Judicial Officer: Magill, Francis J.
Case Status: Dormant

Case Number: 71-CV-22-483
Date Filed: 04/26/2022
Case Title: Truck Insurance Exchange vs Wesley W. Scott, William P. Kain, Margaret R
Henehan, Kelsey B. Quarberg
Case Type: Civil Other/Misc./Civil Other Miscellaneous
Case Location: Sherburne County
Case Status: Closed

Case Number: 27-CV-21-13291
Date Filed: 11/01/2021
Case Title: LifeBack Law Firm, P.A. f/k/a Kain & Scott, P.A. vs Morrison Sund PLLC, Kain +
Henehan LLC, and Brandi Babatz
Case Type: Employment
Case Location: Hennepin County, Hennepin Civil
Judicial Officer: Conley, Thomas J.
Case Status: Closed

9280941v1

Case Number: 73-CV-21-3830
Date Filed: 06/07/2021
Case Title: William P. Kain, Margaret Henehan, Kelsey B. Quarberg vs LifeBack Law Firm,
P.A., fka Kain & Scott, P.A., a Minnesota Corporation, Thirteen-Seventh, LLP, a Minnesota
limited liability partnership, Wesley W. Scott
Case Type: Civil Other/Misc./Civil Other Miscellaneous
Case Location: Stearns County
Judicial Officer: Mahler, Mary B.
Case Status: Closed

Case Number: 71-CR-20-979
Date Filed: 08/26/2020
Case Title: State of Minnesota vs Wesley William Scott
Case Type: Crim/Traf Mandatory Criminal Traffic Mandatory
Case Location: Sherburne County
Case Status: Closed
Citation Number: 710020001053
Defendant
Scott, Wesley William
Date of birth, April 27 1969DOB: 04/27/1969
1.       Operate/permit operation-Wake or wash endangers, harasses or interferes w/others
Disposition: Dismissed
Disposition Date: March 16, 2021
2.       Disorderly Conduct - Offensive/Abusive/Boisterous/Noisy/Obscene
Disposition: Convicted
Disposition Date: March 16, 2021

Case Number: 27-CV-19-11333
Date Filed: 07/03/2019
Case Title: Hoglund, Chwialkowski & Mrozik, P.L.L.C. vs Kain & Scott, P.A. and one or more
John and Jane Doe Defendants
Case Type: Civil Other/Misc./Civil Other Miscellaneous
Case Location: Hennepin County, Hennepin Civil
Judicial Officer: Klein, Joseph R.
Case Status: Closed

    24.    In June of 2021, Scott agreed to a buyout agreement with KHQ, but after it was

drafted by counsel, Scott red-lined most of it, slashing the previously-agreed upon settlement

amount in half, and then refused to settle the case. He continued to allege that, instead, KHQ owed

the Debtor money.

25.    Scott failed to send client files in an efficient or reasonable time frame after clients chose to continue representation with KHQ. On the recommendation of the Board of Professional Responsibility, an ethics complaint was filed against Scott. (This complaint was dismissed in 2024. However, the counter complaint filed with the Board by Scott against Kain and Henehan was also dismissed with the finding that Scott's actions caused more confusion and delay for clients.)  This issue was also brought in front of Judge Tanabe in September 2023, and she ordered on the record that all client files to be transferred that were still outstanding from client's initial request in 2021. See, *In re Biermann*. 22-40740.

26.    Scott and the Debtor filed hundreds of personal identifiers in public filings.  Judge Tanabe also helped facilitate Kain and Henehan to receive third party forms which needed to be redacted on cases they had taken over from the Debtor. Many cases had personal identifiers which the court ordered to be properly redacted.  The Debtor refused to provide the third-party forms so that Kain and Henehan could comply with the orders. The Debtor, throughout the previous year, had issues with failing to redact personal identifiers in hundreds of cases which were not quickly resolved which, in turn, exposed personal information of third-party co-signers. Upon information and belief, Judge Constantine issued an order to show cause and called all Debtor's attorneys to appear in person in her courtroom to explain why this issue had not been resolved.

27.    Additionally, as of August 24, 2023, Judge Tanabe remained displeased with the Debtor's filing of personal identifiers and entered an order, attached hereto as **Exhibit B**, addressing the matter in many cases.

28.    KHQ and Scott owned the real estate from which the Debtor operated via an entity called 13 7th Real Estate Partnership ("**13 7th**").  The Debtor paid rent to 13th 7th which, in turn,

covered the monthly mortgage payment and carrying costs.  Bremer held the mortgages on the properties.  13 7th has defaulted to Bremer as of 2023.

29.    Bremer brought multiple foreclosure actions in state court in 2023.  Again, Kain was personally liable on the mortgage loan and attempted to work with Scott to resolve the foreclosure actions. One of the reasons the actions came about is because of the UCC-1 filing Scott filed against the Debtor's property which caused the mortgage to be out of ratio. This is when Kain and Henehan first learned there was a UCC filing in Scott's favor and against the firm and its assets. The Bremer foreclosure actions were ultimately cancelled. Bremer then sold the mortgage, and it now appears to be held by 3LM Capital Partners, LLC.

30.    Scott claims to be a creditor of the Debtor to the extent of $293,000.00 [Doc. 1, p. 22] and he filed a UCC-1 to that effect.  KHQ had no knowledge that a lien was placed on the business at a time in which Scott did not own more than half of the shares. KHQ learned this when Bremer filed foreclosure paperwork. Kain and Henehan know no details of the loan, how the proceeds were spent, how much has been paid back, or the terms of the security interest.

31.    The Debtor has not been profitable in each of the three years post termination of KHQ. The business returns have showed losses each year, and KHQ's K1s have reflected losses. These losses are at a time where it appears all other bankruptcy firms in the state are profitable, including movants' firm, Kain + Henehan LLC. The Debtor was profitable every year prior to Scott's termination of his only partners.

32.    Scott has a history of untruthfulness. A prime example is the history of a boating incident, caused by Scott, in July of 2020.  The history of the events is detailed in the Petition for Disciplinary Action attached hereto as **Exhibit C**.  Due to this incident, Scott has admitted to lying to a peace office in relation to his 5th degree assault charge. The Office of Lawyers Professional

Responsibility ("**OLPR**") investigated the 5th degree assault incident and subsequent lying to a peace officer and proposed on April 24, 2024 a $900.00 fine and a public reprimand. The ethics petition and proposed order are currently with the Minnesota Supreme Court.  See, **Exhibit D** hereto.  This incident occurred on July 4, 2020 when KHQ were still partners at the firm.  KHQ did not know this incident occurred until shortly before they were fired.  Scott appealed the matter to the Minnesota Court of Appeals and asked staff members to assist with his appellate filings. (The Court of Appeals took Scott to task for, among other things, using different variations of his own name.  **Exhibit E**).  Kain and Henehan were unaware that Scott had been charged with assault or that he had a restraining order against him.

33.    One of the main reasons that this bankruptcy case was commenced is due to the Hoglund Law Firm obtaining a judgment against the Debtor based on "click fraud" undertaken by Scott.  (Google charges based on the advertising clicks.  Scott caused the Hoglund Firm's advertisements to receive clicks solely for the purpose of running up the charges.  Scott initially denied this.)  An arbitrator in the Hoglund case found Scott to have lied under oath in addition to committing click fraud. **Exhibit F.**  The arbitrator held that, "I find that from at least late 2017 through January of 2019 when Kain & Scott was served the lawsuit, Kain & Scott intentionally and repeatedly clicked on the Hoglund Firm's ads for the purpose of causing harm to the Hoglund Firm." *Id*., at p 3-4.  (This had been denied by Scott).

34.    The act of committing click fraud put the Debtor's entire business at risk. Scott did this as a business strategy without informing his partners. The click fraud also occurred at odd hours of the day when no one else would have been in the office. Upon information and belief, at one point in the time, the Debtor could have settled the Hoglund case for a nominal sum, but Scott

refused and now the amount owed to Hoglund is $290,000.00 plus interest.  See, **Ex. G** (Proposed Order submitted to the Hennepin County District Court).

35.     At the time Scott fired KHQ, they were aware that he had already spent hundreds of thousands of the Debtor's funds on the Hoglund click fraud lawsuit. KHQ knew they had no ability to stop Scott and the spending because he was obsessed with the lawsuit and believed it would result in the Debtor getting a judgment against Hoglund. Scott had unrealistic expectations of a recovery against Hoglund. Scott believed he would win millions of dollars and he would call Quarberg and Henehan and ask how good it would feel to have Scott pay off their student loans with the money. Scott also stopped practicing law for these two years and spent all of his time "running the business" and managing the lawsuit. The lawsuit consumed Scott. Kain and Henehan believe that Scott continued to spend the Debtor's cash on the lawsuit up until this bankruptcy case was commenced. This is major evidence of Scott's inability to make decisions that are in the best interests of the Debtor, its shareholders and creditors.

36.     Debtor Jalen Burns had her chapter 7 case filed by the Debtor without client permission or signature (Bankr. No. 23-30129) on January 26, 2023.  The United States Trustee filed an adversary proceeding (Adv. No. 23-3041) related to this matter which was settled.  The Debtor paid out over $10,000.00 in attorney fees for Ms. Burn's representation to dismiss her chapter 7 case.

37.     Kain returned a Debtor-owned iPad in 2023 (after not realizing that he possessed it). Kain's personal Gmail account (with login credentials saved on the device) was subsequently accessed by Scott who then read attorney client privileged emails involving movants' suit with him. Kain and Henehan know this because Scott forwarded some of those emails and direct quotes from the emails to Kain and Henehan. Scott then argued that because the iPad was the Debtor's

9280941v1

property, he had the right to read Kain's personal email account and the attorney client privilege did not exist.

38.     In mid-2023, Timothy Tonga ("**Tonga**") and Danielle Lin ("**Lin**") quit working as attorneys for the Debtor.  Upon information and belief, the following then occurred:   Tonga and Lin needed to stop at the Debtor's Eagan office to pick up their personal belongings and drop off any firm property in their possession. Scott instructed them to stop by on a Friday at a specific time. Despite Scott primarily officing out of the St. Cloud location, Lin was so nervous that Scott might be at the Eagan office that she and Tonga called the Eagan police to request an officer as an escort. When they arrived, Scott was outside of the office yelling at the police officer. The officer informed Tonga and Lin that Scott was refusing to let the officer into the Eagan office. Scott then agreed with the officer that he would stay outside while Tonga and Lin went inside, but only allowed them two minutes to gather their belongings or threatened that he would charge them with trespassing. As Tonga and Lin gathered their property, Scott was yelling profanities outside, including putting his fingers in an "L" shape on his forehead and calling them losers. Scott counted down the two minutes by the second and rushed them quickly out. At the end, the officer approached Tonga and Lin's car and advised them to drive straight to the courthouse and file a harassment restraining order against Scott because he was "unhinged" and the officer was worried for their safety. They discussed his previous behavior in St. Cloud, with his neighbor and calling the police on Quarberg. The Eagan officer said he would call the St. Cloud police to see their thoughts on Scott and whether anything should be done about his repeated behavior.

39.     The Hoglund case resulted in an arbitration award that was upheld on appeal. Scott began posting numerous YouTube videos and blog posts directly targeting, naming, and defaming Hoglund (many have been deleted post-bankruptcy filing). In the videos, Scott says the Debtor

13

will continue to spend whatever it needs to spend in order to fight the actions of "bad actors" as to which he is accusing Hoglund and other firms. This evidences that Scott will continue to waste the Debtor's assets on frivolous lawsuits against competitors. Scott's defamatory videos and posts are cause for Hoglund to sue him again, thus potentially costing the Debtor even more money.

40.    Scott filed an OLPR report against Quarberg, accusing her of being a drug dealer. His theory was that she and her husband were drug dealers because he learned that they had purchased a grill with cash. Scott also called one of Quarberg's restaurant employees[2] and asked her if Quarberg was selling drugs through her restaurant as a cover. Scott told the employee that she was no help, and he would just have to prove it through a private investigator. At that time, Quarberg had noticed multiple private investigators sitting outside her home. This was also while she was home on maternity leave.  Quarberg's husband is a former private investigator, so it was easy for him to spot and confirm the private investigators in front of their home.

41.    When Quarberg first became employed with Kain & Scott, she learned that the firm had quarterly "profit sharing." When she was added to the leadership team, Quarberg learned that Scott calculated profit by whatever the balance was in the bank accounts on the last day of the quarter. Quarberg had to explain to Scott that cash flow (your account balances every day), is different than profit. She explained that it would be a bad idea to empty the accounts every quarter based on the current balance. Because of Quarberg, the firm changed how it paid bonuses which ultimately provided some financial protection to the Debtor.

42.    When Covid occurred, bankruptcy filings decreased, which caused the Debtor's revenue to likewise decrease. Scott refused to downsize office space or attorneys because one of the claims in the lawsuit with Hoglund was who got to call themselves the "largest" or "biggest"

---

[2] Quarberg was formerly an owner of The Suburban in Excelsior, MN.

bankruptcy firm in Minnesota. Reducing firm overhead, including rent, utilities, and labor costs, to fit within the reduced revenue was best for the firm. Yet, Scott refused to do anything about it. Instead, Scott just stopped paying himself in 2020 without telling his partners. Quarberg and Henehan got together in early 2021 and spent days reviewing the Debtor's financial statements. They calculated that the firm needed to furlough two attorneys to continue functioning at the new reduced revenue. KHQ witnessed multiple incidents where it appeared Scott never actually looked at or understood the firm's profit and loss statements. Despite that, the firm kept growing and making money without oversight. The onset of Covid was the first reduction in revenue and Scott lacked the ability and knowledge to adjust the Debtor's overhead to fit within the new revenue.

43.     On May 6, 2024, after the commencement of this case, Scott sent an email to Scott Payzant, an attorney for movants, and offered to resolve his disputes with Kain (but not Henehan) as follows:

Greetings Dr. Payzant:

Until Mr. Berner's representation can be approved by the bankruptcy court, I am representing the firm and myself temporarily.

In addition, the firm is prepared to offer Mr. Kain the sum of $230,000.00 payable over 4 years at 2%, mutual releases from all litigation.

Please relay and reply to this offer to settle all matters.

Thanks!

I remain—

Your Humble Servant—

Wes

44.     The offer made to Kain is problematic for any number of reasons in the context of this Chapter 11 case.  Either in Kain's capacity as an unsecured creditor or equity holder, such an offer is inappropriate.

45.     In litigation with movants, Scott has claims against him personally related to his ownership of Debtor and is making claims in his personal capacity related to the Debtor.  This creates a conflict of interest in running the Debtor, in general.

46.     On May 8, 2024, the Internal Revenue Service filed proof of claim 1 in this case evidencing a liability of $219,202.62 dating from 2021 through 2024.  **Exhibit H**.

47.     Even with the Debtor being a debtor in a Chapter 11 case, Scott continues to malign the Hoglund firm thus instigating the possibility of additional liabilities for the Debtor.  Debtor's website contains a multitude of recent slights directed toward Hoglund dated May 12, 2024 at https://blog.lifebacklaw.com/blog/hoglund-law-reviews-by-real-customers.   (A screen shot is attached hereto as **Exhibit I** in the event the post is taken down.)

48.     The Debtor in possession must be removed.  Scott is the sole reason for the debt and a plethora of bad decisions.  This bankruptcy case is not the result of market forces, a labor shortage, or other influences on the consumer bankruptcy practice.  At the time KHQ were fired, the Debtor had no debt.  After Scott terminated KHQ, and refused to settle any lawsuits, he exhausted the Debtor's line of credit, filed a $500,000.00 lien against the Debtor's assets (claiming he was loaning the firm that much), triggered a foreclosure of the mortgage, faced multiple fines in court, and is now in Chapter 11 bankruptcy.  As detailed herein, the center of this universe is Scott who has proven that he cannot be trusted to operate this Debtor.

**WHEREFORE**, William Kain and Margaret Henehan respectfully request that the Court enter an order as follows:

9280941v1

1.      Removing the Debtor as debtor in possession pursuant to 11 U.S.C § 1185;

2.      Directing the Subchapter V Trustee to operate the business of the Debtor per 11 U.S.C. § 1183(b)(5) together with the other duties provided by that section;

3.      Directing that the Subchapter V Trustee's powers are expanded to include the powers specified in §§ 1106(a)(3) and (4); and,

4.      Granting such other relief as the Court finds just and equitable.


MOSS & BARNETT
A Professional Association

Dated: May 13, 2024                By  s/ *Matthew R. Burton*
                                        Matthew R. Burton (#210018)
                                   150 South Fifth Street, Suite 1200
                                   Minneapolis, MN 55402
                                   Telephone: (612) 877-5000
                                   Email: matthew.burton@lawmoss.com
                                   ATTORNEYS FOR WILLIAM KAIN AND
                                   MARGARET HENEHAN


## **VERIFICATIONS**

I, William Kain, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.


Dated: May 13, 2024                s/ *William Kain*
                                   William Kain


I, Margaret Henehan, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.


Dated: May 13, 2024                s/ *Margaret Henehan*
                                   Margaret Henehan

9280941v1

I, Kelsey Quarberg, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Dated: May 13, 2024                          s/ *Kelsey Quarberg*
                                             Kelsey Quarberg

# NEW YORK POST

LOG IN

**TRENDING NOW IN US NEWS**

 **Teacher, 24, busted for 'making out' with 11-year-old,...**

 **RFK Jr. said doctors found a dead worm in his head after it ate...**

 **Hous... and k... McDo...**

*POLITICS*

# Minnesota law firm fired pro-Trump employees, lawsuit claims

By Joshua Rhett Miller

Published June 10, 2021
Updated June 10, 2021, 10:06 a.m. ET



Wesley Scott, president of the Kain & Scott law firm in St. Cloud, is being sued for wrongful termination.

kainscott.com

EXHIBIT
A

# EXPLORE MORE

**9 of 10 wrongful death suits over Astroworld concert crowd surge have been settled: lawyer**

---

**Tennis prodigy Kylie McKenzie wins $9 million sexual assault lawsuit against USTA**

---

**Panera Bread halts sale of highly caffeinated 'Charged' drinks after wrongful death lawsuits**

The head of a Minnesota law firm fired two employees he decided were "racist" — because of social media posts supportive of police or former President Donald Trump, a new lawsuit claims.

The wrongful termination suit, filed in Stearns County District Court, alleges Wesley Scott, president of the Kain & Scott law firm in St. Cloud, was angered by the Jan. 6 riot at the US Capitol and sent an email in April to the firm's attorneys saying that the "traitors" who stormed the building that day should have been shot, the Minneapolis Star Tribune reported.

Scott then told the firm's operations manager to terminate two employees he deemed "racist" due to the pro-Trump posts on their social media accounts — as well as other messages that backed law enforcement officials, the lawsuit claims.

Scott then fired the manager when she refused to terminate the employees and proceeded to fire another employee while threatening to let go of another, according to the complaint.





Donald Trump arrives to speak at a rally in Washington before the Capitol riot happened on Jan. 6, 2021.

AP Photo/Jacquelyn Martin

Three partners at the firm — William Kain, Margaret Henehan and Kelsey Quarberg — later confronted Scott over the firings, telling him it violated state law to fire employees due to their political beliefs, the suit states.

In response, Scott fired the partners, even calling St. Cloud police to get Quarberg removed from the office, alleging she was trespassing and physically threatening him.

Scott also changed the locks on the offices and cut off his former partners' email accounts, according to the suit.

The former partners at the firm specializing in bankruptcy cases are now suing Scott for wrongful termination, claiming he accused them of plotting a "coup" against him, the lawsuit claims.

"We have three employees … who are way over the top violating everything that is dear to us and I won't let that happen," Scott allegedly told staffers during a meeting on the firings, saying the partners were let go for insubordination.

## SEE ALSO



Scott told the Star Tribune on Tuesday he had no comment,
saying he had not read the lawsuit. Messages seeking comment
from Scott and the St. Cloud office were not immediately returned
early Thursday.

**Senate report reveals
widespread law
enforcement failings
during Capitol riot**



Pro-Trump protesters storm into the US Capitol during clashes with police on Jan. 6, 2021.

Appleton/File Photo

**MORE STORIES**

**PAGE SIX**

Quartberg, meanwhile, told the Star Tribune she and her former partners were told by their attorney
not to comment on the filing.

FILED UNDER    CAPITOL RIOT,   DONALD TRUMP,   LAW FIRMS,   LAWSUITS,   MINNESOTA,   6/10/21

READ NEXT    **The new guy? Biden debuts at democracy's most exclusive cl...**

Your California Privacy Rights

© 2024 NYP Holdings, Inc. All Rights Reserved  |  Terms of Use  |  Membership Terms  |  Privacy Notice  |  Sitemap

Powered by WordPress VIP

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:                                                              Case Nos.:

| | |
|---|---|
| Christopher Bruce Stone | 18-41648 KLT; |
| Thomas Franklin Carter, | 21-41655 KLT; |
| Deborah Janine Maurer and | |
| Ricky Allan Maurer, | 21-42174 KLT; |
| Patricia Joanne Ellis and | |
| Claudia Joyce Ellis, | 22-30841 KLT; |
| Jesse Frank Brooke, | 22-30904 KLT; |
| Kelly Lee Bruckschen, | 22-32116 KLT; |
| Katherine Ann Elling | 22-40575 KLT; |
| Jessica Ann Thomas, | 22-40927 KLT; |
| Kayla Ruby Orozco, | 22-41078 KLT; |
| Charles Howard Stewart, | 22-41183 KLT; |
| Rudy Renea Walker, | 22-41235 KLT; |
| Rose Kwamboka Mogire, | 22-41356 KLT; |
| Kristal Elaine Ficzeri, | 22-41433 KLT; |
| Kimmi Jo Baumhardt, | 22-41511 KLT; |
| John Monte Storms, | 22-41529 KLT; |
| Julia Clare Fautsch, | 22-41689 KLT; |
| Janet Lee Fisher, | 22-41722 KLT; |
| Kerri Lynn Winters, | 23-30364 KLT; |
| Barbara Louise Kessler, | 23-30490 KLT; |
| Amanda Jill Kronenberg-Correa and | |
| Obed Correa, | 23-30695 KLT; |
| Brittany Nicole Moore and | |
| Duane Deming Wayman, | 23-30730 KLT; |
| Matthew Alan Schwantes, | 23-30877 KLT; |
| Jamie Louise Mortensen, | 23-30979 KLT; |
| Taylor Nicole Harlukowicz and | |
| Dustin Jamie Harlukowicz, | 23-30991 KLT; |
| Joan Marie Golle, | 23-31036 KLT; |
| John Lewis Johnson, | 23-31104 KLT; |
| Ariel Raenae Svoboda, | 23-31187 KLT; |
| Megan Marie Lampman, | 23-31243 KLT; |
| David Louis Hudson, | 23-31257 KLT; |
| Brianna Marie Topper, | 23-31401 KLT; |
| LaTrice Dominque Bryant, | 23-31515 KLT; |
| Ashley Noelle Gordon, | 23-40048 KLT; |
| Laura Lynn Jackson and | |
| James Wesley Jackson, | 23-40054 KLT; |
| DanYale Latreece Davis, | 23-40113 KLT; |
| Elijah Robbyns Monyenye, | 23-40154 KLT; |

<div style="border:1px solid black; display:inline-block;">

**EXHIBIT**
**B**

</div>

| | |
|---|---|
| John Raymond McCann, Jr., | 23-40254 KLT; |
| Cyrus Rocky McClain, | 23-40399 KLT; |
| Kara Marie Carter, | 23-40430 KLT; |
| Jessica Jolene Olson, | 23-40478 KLT; |
| Dionne Patrice Conniff, | 23-40537 KLT; |
| Carrie Lynn Ramsey, | 23-40688 KLT; |
| Andrew Lee Bernet, | 23-40810 KLT; |
| Zachary Scott Chavez, | 23-40831 KLT; |
| Joanna Leigh Lauber, | 23-40965 KLT; |
| Tonja Marie Myers, | 23-40993 KLT; |
| Fred Ithel Durham, Jr., | 23-41223 KLT; |
| Tawana Marie White and | |
| Charlie Carter Joyce, III | 23-41336 KLT; |
| Jorge Padilla, | 23-41428 KLT; |
| David Michael Moody, | 21-41988 KLT; |
| Michelle Mary Florez, | 22-30190 KLT; and |
| Travis Jon Renne, | 22-40595 KLT. |

|  |  |
|---|---|
| Debtors. | Chapter 7 |

---

## ORDER

---

LifeBack Law Firm, PA ("LifeBack") failed to comply with Federal Rule of Bankruptcy Procedure 9037 by filing public documents with unredacted personal identifiers in third-party guaranties (collectively, the "Unredacted Documents"). To address this situation, the Court entered an Order to Show Cause on August 2, 2023 in the first 48 cases in the caption. See In re Christopher Bruce Stone, Case No. 18-41648 (Bankr. D. Minn. Aug. 2, 2023), ECF No. 80 (the "OTSC"). The OTSC directed LifeBack: (1) to file a separate motion to redact ("Motion") in each case involving an Unredacted Document; and (2) to serve upon each Guarantor: (a) a letter explaining its failure to comply with Rule 9037 and the disclosure of their private information (a "Letter"); and (b) a copy of the OTSC. The Court also directed LifeBack to file proof of service in each case for the Motion and Letter.

Subsequently, three more cases with Unredacted Documents were identified. The Court entered three more orders directing LifeBack to take corrective action.  Order, In re David Michael Moody, Case No. 21-41988 (Bankr. D. Minn. Aug. 14, 2023), ECF No. 27; Order, In re Michelle Mary Florez, Case No. 22-30190 (Bankr. D. Minn. Aug. 14, 2023), ECF No. 25; Order, In re Travis John Renne, Case No. 22-40595 (Bankr. D. Minn. Aug. 14, 2023), ECF No. 32. LifeBack complied with all but one requirement in these three cases: to date, it has failed to file a copy of the Letter with the Court.

On August 23, 2023, the Court held a hearing for all of the above-captioned cases. Appearances were noted on the record. Bankruptcy Rule 9037(h)(1) requires the Motion to be served on the debtor, debtor's attorney, trustee, United States trustee, filer of the unredacted document, and any individual whose personal identifying information ("PII") is to be redacted. For the Motions filed in all of the cases except Moody, Florez and Renne, the certificates of service include a statement that the affiant "caused to be served the Motion to Redact and associated exhibits *via the CM/ECF* upon the Debtor, the Trustee, the U.S. Trustee, and any parties whose information may have been compromised *by first class mail*." (emphasis added) All such certificates of service are deficient because the method of service is unclear. For the avoidance of doubt, the Debtor and the person whose PII was disclosed must be served via U.S. Mail. CM/ECF service on Debtor's counsel does not constitute service on the Debtor for this purpose. See Fed. R. Bankr. P. 9037. Additionally, the certificates of service are deficient because they include the phrase "any parties whose information may have been compromised by first class mail." The person who signs the certificate of service should indicate the actual name, address, and method of service for each person who was actually served, and not ambiguous phrases in lieu of such information.

LifeBack previously requested permission to file consolidated Motions and such permission was expressly denied. Notwithstanding this clear instruction, LifeBack filed a consolidated certificate of service for the Letter and OTSC. To ascertain whether LifeBack has complied with the second requirement in the OTSC, the Court was forced to search through each Motion, the related third-party guaranty, and the list of guarantors on the consolidated certificate of service. This search confirmed that only 44 of the 48 affected parties were served with the required Letter and OTSC. The consolidated certificate of service omits any reference to, and thus suggests the Letter and OTSC have not yet been served in, the following four cases: (1) In re Rose Kwamboka Mogire, Case No. 22-41356; (2) In re Kristal Elaine Ficzeri, Case No. 22-41433; (3) In re Kimmi Jo Baumhardt, Case No. 22-41511; and (4) In re Jamie Louise Mortensen, Case No. 23-30979.

Accordingly, IT IS ORDERED:

1. No later than **4:00 p.m. on Wednesday, August 30, 2023**, LifeBack shall file a new certificate of service for the Motion in each of the 48 cases identified in the OTSC. If LifeBack has not yet provided proper service of the Motion on Debtor and on Guarantor by first-class U.S. mail, LifeBack must serve them accordingly. Each certificate of service shall indicate the person served, the documents served, and the date, address and manner of service. For the avoidance of doubt, no consolidated certificates of service shall be permitted.

2. No later than **4:00 p.m. on Wednesday, August 30, 2023**, LifeBack shall file a new certificate of service for the Letter and OTSC for each of the 48 cases identified in the

OTSC. If LifeBack has not yet provided proper service of the Letter and OTSC on Guarantors, LifeBack must serve them accordingly. Counsel shall file a copy of the Letter as an exhibit to the certificate of service in each case. Each certificate of service shall indicate the person served, the documents served, and the date, address and manner of service. For the avoidance of doubt, no consolidated certificates of service shall be permitted.

3. No later than **4:00 p.m. on Wednesday, August 30, 2023**, LifeBack shall file a copy of the Letter in each of the following three cases: Case No. 21-41988 (Moody); Case No. 22-30190 (Florez); and Case No. 22-40595 (Renne).

4. LifeBack may not charge legal fees or costs to any Debtors or Guarantors for complying with this Order.

5. If LifeBack does not comply with this Order, the Court may refer the attorney of record for each noncompliant matter to the Lawyers Professional Responsibility Board of Minnesota, the Chief Judge of the United States District Court for the District of Minnesota, or both.

DATED: August 24, 2023

*/e/Kesha L. Tanabe*

_____

Kesha L. Tanabe
United States Bankruptcy Judge



FILED

April 23, 2024

OFFICE OF
APPELLATE COURTS

FILE NO. _____

STATE OF MINNESOTA

IN SUPREME COURT

---------------------------------------------------

In Re Petition for Disciplinary Action
against WESLEY W. SCOTT,
a Minnesota Attorney,
Registration No. 0264787.

---------------------------------------------------

**PETITION FOR
DISCIPLINARY ACTION**

TO THE SUPREME COURT OF THE STATE OF MINNESOTA:

The Director of the Office of Lawyers Professional Responsibility (Director) files

this petition upon the parties' agreement pursuant to Rules 10(a) and 12(a), Rules on

Lawyers Professional Responsibility.  The Director alleges:

The above-named attorney (respondent) was admitted to practice law in

Minnesota on May 10, 1996.  Respondent currently practices law in St. Cloud,

Minnesota.

Respondent has committed the following unprofessional conduct warranting

public discipline:

### FIRST COUNT

1.     On July 4, 2020, M.W.S., a resident of Long Lake, drove his pontoon boat

on Long Lake in Sherburne County, Minnesota, displaying a political flag.

2.     Respondent was driving his jet ski on Long Lake and saw M.W.S.'s

pontoon with a political flag.  Respondent and M.W.S. were involved in an altercation

while respondent was operating his jet ski.  During the incident, M.W.S. contacted the

Sherburne County emergency dispatch center for assistance from law enforcement.

3.     On the same day, Sherburne County Sheriff's Office Deputy Scott

Anderson and Deputy Robin McKay were dispatched to the residence of M.W.S. to take

EXHIBIT
C

a report of the incident.  M.W.S. had identified the jet ski involved in the incident as a blue Yamaha Wave Runner with registration number MN4530LV.

4.      Deputies Anderson and McKay identified the registered owner of the jet ski watercraft in the incident as respondent and drove to his address to inquire about the incident.  Upon arrival, Deputies Anderson and McKay parked in the driveway and observed respondent in the back standing on a dock.  Deputies Anderson and McKay approached respondent and asked him about the jet ski.  Respondent stated that his brother had been driving the jet ski that day.  Respondent stated that the individual on the pontoon had spit at his brother, which he thought was out of line due to the coronavirus.  Respondent's statement was knowingly false.  Respondent was the one driving the jet ski and respondent knew that he, not his brother, was the one driving the jet ski and the one who had the altercation with M.W.S.

5.      Respondent would not identify himself or provide his brother's name or phone number.  Respondent then asked Deputy Anderson and Deputy McKay to leave his property.  The deputies left the property as requested.

6.      After leaving respondent's property on July 4, 2020, Deputy Anderson received a still shot of the video of the driver of the jet ski for identification purposes.  Upon receiving the still shot on his phone, Deputy Anderson noticed that the individual on the jet ski in the picture was respondent, the person Deputy Anderson had been speaking with at respondent's residence.  Following the July 4, 2020, incident, respondent corrected his statement to law enforcement and admitted that he was the individual driving the jet ski.

7.      On July 7, 2020, M.W.S. filed a petition for harassment restraining order (district court file no. 71-CV-20-725) (petition) against respondent which the court granted on an *ex parte* basis.  Respondent requested a hearing be held on the petition.

2

8.     On July 24, 2020, a hearing was held on the petition.  During the hearing, respondent admitted under oath that he was the individual driving the jet ski during the incident with M.W.S. and not his brother.

9.     Respondent's conduct in providing information on July 4, 2020, to a peace officer that his brother was driving the jet ski during the incident with M.W.S. with knowledge that the information was false violated Rule 8.4(c) and (d), Minnesota Rules of Professional Conduct (MRPC).

WHEREFORE, the Director respectfully prays for an order of this Court imposing appropriate discipline, awarding costs and disbursements pursuant to the Rules on Lawyers Professional Responsibility, and for such other, further or different relief as may be just and proper.

*Susan M. Humiston*

Humiston, Susan
Apr 22 2024 2:47 PM

SUSAN M. HUMISTON
DIRECTOR OF THE OFFICE OF LAWYERS
    PROFESSIONAL RESPONSIBILITY
Attorney No. 0254289
445 Minnesota Street, Suite 2400
St. Paul, MN  55101-2139
(651) 296-3952
Susan.Humiston@courts.state.mn.us

and

*Kristine Nelson Fuge*

Fuge, Kristine
Apr 22 2024 2:22 PM

KRISTINE NELSON FUGE
SENIOR ASSISTANT DIRECTOR
Attorney No. 0272954
Kristine.Fuge@courts.state.mn.us

**FILED**

April 23, 2024

**OFFICE OF
APPELLATE COURTS**

FILE NO. _____

STATE OF MINNESOTA

IN SUPREME COURT

-----------------------------------------------------

In Re Petition for Disciplinary Action
against WESLEY W. SCOTT,
a Minnesota Attorney,
Registration No. 0264787.

-----------------------------------------------------

**STIPULATION FOR DISPENSING
WITH PANEL PROCEEDINGS,
FOR FILING PETITION FOR
DISCIPLINARY ACTION,
AND FOR DISCIPLINE**

THIS STIPULATION is entered into by and between Susan M. Humiston,

Director of the Office of Lawyers Professional Responsibility (Director), and Wesley W.

Scott, attorney (respondent).

WHEREAS, respondent has concluded it is in respondent's best interest to enter

into this stipulation,

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and

between the undersigned as follows:

1.      It is understood that respondent has the right to have charges of

unprofessional conduct heard by a Lawyers Professional Responsibility Board Panel

prior to the filing of a petition for disciplinary action, as set forth in the Rules on

Lawyers Professional Responsibility (RLPR).  Pursuant to Rule 10(a), RLPR, the parties

agree to dispense with Panel proceedings under Rule 9, RLPR, and respondent agrees

to the immediate filing of a petition for disciplinary action (petition) in the Minnesota

Supreme Court.

2.      Respondent understands that upon the filing of this stipulation and the

petition, this matter will be of public record.

EXHIBIT
D

3.      It is understood that respondent has certain rights pursuant to Rule 14, RLPR.  Respondent waives these rights, which include the right to a hearing before a referee on the petition; to have the referee make findings and conclusions and a recommended disposition; to contest such findings and conclusions; and to a hearing before the Supreme Court upon the record, briefs and arguments.  Respondent admits service of the petition.

4.      Respondent waives the right to answer and unconditionally admits the allegations of the petition.

5.      Respondent understands that based upon these admissions, this Court may impose any of the sanctions set forth in Rule 15(a)(1) - (9), RLPR, including making any disposition it deems appropriate.  Respondent understands that by entering into this stipulation, the Director is not making any representations as to the sanction the Court will impose.

6.      The Director and respondent join in recommending that the appropriate discipline is a public reprimand pursuant to Rule 15, RLPR.  Respondent agrees to the imposition and payment of $900 in costs and disbursements pursuant to Rule 24, RLPR.

7.      This stipulation is entered into by respondent freely and voluntarily, without any coercion, duress or representations by any person except as contained herein.

8.      Respondent acknowledges receipt of a copy of this stipulation.

9.      Respondent has been advised of the right to be represented herein by an attorney but has freely chosen to appear *pro se*.

IN WITNESS WHEREOF, the parties executed this stipulation on the dates indicated below.

*Susan M. Humiston*

Humiston, Susan
Apr 22 2024 1:55 PM
_____
SUSAN M. HUMISTON
DIRECTOR OF THE OFFICE OF LAWYERS
 PROFESSIONAL RESPONSIBILITY
Attorney No. 0254289
445 Minnesota Street, Suite 2400
St. Paul, MN  55101-2139
(651) 296-3952
Susan.Humiston@courts.state.mn.us

*Kristine Nelson Fuge*

Fuge, Kristine
Apr 22 2024 12:52 PM
_____
KRISTINE NELSON FUGE
SENIOR ASSISTANT DIRECTOR
Attorney No. 0272954
Kristine.Fuge@courts.state.mn.us

Dated: _____, 2024.

_____
WESLEY W. SCOTT
RESPONDENT
Attorney No. 0264787
13 Seventh Avenue South
St. Cloud, MN  56301
wes@lifebacklaw.com

3

*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A20-1334**

Mitchell Wilfred Suess,
Respondent,

vs.

Wesley W. Scott,
Appellant

**Filed May 10, 2021**
**Affirmed**
**Reyes, Judge**

Sherburne County District Court
File No. 71-CV-20-725

Mitchell Wilfred Suess, Clear Lake, Minnesota (pro se respondent)

Wesley M. Scott,[1] Clear Lake, Minnesota (pro se appellant)

Considered and decided by Jesson, Presiding Judge; Worke, Judge; and Reyes, Judge.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

In this appeal from the district court's grant of respondent's petition for a harassment

restraining order (HRO), appellant argues that the district court abused its discretion by

---

[1] We note that appellant's name also appears in multiple documents associated with this case as Wesley M. Scott and Wesley J. Scott. Because we are bound by the district court's title of the action, we use Wesley W. Scott here. Minn. R. Civ. App. P. 143.01.

EXHIBIT
E

(1) determining that his conduct constituted harassment; (2) imposing a 500-foot distance restriction and a two-year duration in the HRO; and (3) denying his motion for a new trial and request for a continuance.  We affirm.

## FACTS

The following facts are based on the district court's findings of fact and implicit credibility determinations.  On July 4, 2020, respondent Mitchell Wilfred Suess drove his pontoon boat on Long Lake in Sherburne County, Minnesota, flying a political flag.  Appellant Wesley W. Scott approached him on a jet ski three separate times.  During the first incident, Scott "flip[ped] [Suess] off" and yelled "f--k you."  During the second incident, he called Suess names, yelled profanities, circled Suess's boat, and sprayed Suess with water.  He also made rude and threatening gestures, including appearing to reach toward the pontoon as if to board, and yelled that he would "beat the f--k out of" Suess.  Suess spit on Scott out of fear and in an effort to get Scott to leave.  And during the third incident, as Scott approached again, Suess yelled that he was on the phone with the sheriff.  Scott asked if Suess was a Christian and said it was impossible for Suess to be a Christian and fly the flag.  He again yelled profanities and called Suess a racist.

Suess filed a petition for an HRO, describing these events.  The district court granted an ex parte HRO, which prohibited contact between the parties until December 2021.

Scott requested a hearing, which both parties attended on July 24, 2020 (HRO hearing).  In addition to testimony that reflected the facts recounted above, the district court considered a letter from Suess's therapist showing his treatment for anxiety and post-traumatic-stress disorder and photos of the parties' interaction taken from Suess's cell-

phone video of one of the incidents.  Scott objected to the therapist's letter for lack of foundation and relevance.

After Suess testified, Scott cross-examined Suess.  However, the district court stopped him after six questions because it deemed the questioning harassing.  Scott then testified as to his version of events.

The district court found that Scott's behavior on July 4 constituted several incidents of harassment and therefore issued an HRO, which included a 500-foot distance restriction and prohibited contact between the parties for two years.  Scott filed a motion for a new trial asking the district court to vacate the HRO, grant a new trial, recuse herself, and require Suess to provide all exhibits before the new trial.

The district court declined to recuse.  At a hearing on September 17, 2020 (motion hearing), it denied Scott's motion for a new trial, but reopened the matter for the limited purpose of allowing Scott to cross-examine Suess.  Scott asked for a continuance so that he could obtain an attorney.  The district court denied this request and ordered him to proceed with cross-examination immediately, which he did.  The district court ultimately affirmed the HRO as is, finding Suess's testimony at the motion hearing credible and "virtually identical" to his testimony at the HRO hearing.  This appeal follows.

## DECISION

**I.    The district court did not abuse its discretion by determining that Scott's conduct constitutes harassment.**

Scott argues that only one of his interactions with Suess constitutes harassing conduct and that his conduct therefore cannot meet the requirement of repeated incidents. We disagree.

We review the district court's ultimate decision to grant an HRO for an abuse of discretion. *Peterson v. Johnson*, 755 N.W.2d 758, 761 (Minn. App. 2008). In doing so, we review the district court's factual findings for clear error and give due regard to its opportunity to judge witness credibility. *Id.* But whether the facts found by the district court satisfy the definition of harassment is a question of law that we review de novo. *Id.* (explaining that authority to grant an HRO is statutory and that we review statutory interpretation questions de novo).

Harassment is defined, in relevant part, as "repeated incidents of intrusive or unwanted acts, words, or gestures that have a substantial adverse effect or are intended to have a substantial adverse effect on the safety, security, or privacy of another." Minn. Stat. § 609.748, subd. 1(a)(1) (2020); *Peterson*, 755 N.W.2d at 766 (stating that one incident is not enough to constitute harassment absent infliction of bodily harm or attempt to inflict bodily harm). The district court may grant an HRO if, after a hearing, it finds "reasonable grounds to believe that" harassment occurred. *Kush v. Mathison*, 683 N.W.2d 841, 844 (Minn. App. 2004). "The statute requires proof of, first, 'objectively unreasonable conduct *or* intent on the part of the harasser.'" *Peterson*, 755 N.W.2d at 764 (emphasis added)

(quoting *Dunham v. Roer*, 708 N.W.2d 552, 567 (Minn. App. 2006), *review denied* (Minn. Mar. 28, 2006)).  Objectively unreasonable conduct "goes beyond an acceptable expression of outrage and civilized conduct." *Kush*, 683 N.W.2d at 846.  Second, the statute requires proof of "an objectively reasonable belief" by the harassed person that the harasser engaged in harassment. *Peterson*, 755 N.W.2d at 764 (quoting *Dunham*, 708 N.W.2d at 567) (other citation omitted).

Here, the district court determined that Scott's behavior constituted harassment. The district court found that Scott approached Suess three times.  It found that Scott circled the pontoon, sprayed Suess, yelled profanities, called Suess names, and threatened to beat Suess.  Due in part to its use of a form order, the district court did not make explicit findings regarding what Scott did during each incident.  But on appeal, we may consider the district court's implicit findings of fact as well as its explicit findings. *See Pechovnik v. Pechovnik*, 765 N.W.2d 94, 99 (Minn. App. 2009) (considering, on appeal from the district court's grant of an order for protection, implicit credibility findings).  Here, in light of the district court's other findings and its ultimate determination, we conclude that it implicitly credited Suess's testimony that described Scott's behavior during the three separate incidents as follows: first, Scott "flip[ped] [Suess] off" and yelled "f--k you" from around 30 to 40 feet away; second, Scott approached within 10 and 15 feet of the pontoon, yelled profanities, called Suess offensive names, threatened "to beat the f--k out of" Suess, reached for Suess's pontoon as if to board, and sprayed Suess with water; third, Suess called the sheriff, and Scott again approached to within 30 to 40 feet of the pontoon, and, among other things, called Suess a racist.

5

Turning to whether each incident constitutes harassing conduct, we first note that Scott's behavior during each incident went beyond acceptable expressions of outrage and was objectively unreasonable.  In addition, the district court found that Scott intended to harass Suess.  Scott admitted that, by approaching Suess, he intended to engage with and elicit a response from Suess.  The district court noted Scott's proximity to the pontoon and repeated approaches in making this finding.  We conclude that the record supports the district court's finding that Scott intended to harass Suess.

On the second factor, the district court found that Scott's actions impacted Suess.  It noted that Scott came close enough to the pontoon to be spit on and found that this proximity encroached on Suess's security.  The district court also credited Suess's testimony that he spit on Scott out of fear.  Although the district court made no findings regarding whether the first or third incidents impacted Suess, we note that Scott approached Suess multiple times, showing repeated threatening behavior.  Further, Suess testified that he visited his therapist more frequently and had increased nightmares and anxiety as a result of Scott's behavior.  The record therefore supports the district court's explicit and implicit determinations that each incident impacted Suess and that Suess's belief in that impact was objectively reasonable.  In sum, because the record supports the district court's decision, we conclude that it did not abuse its discretion by issuing the HRO.

**II.    The HRO terms are not an abuse of the district court's discretion.**

Scott argues that the district court abused its discretion by imposing a 500-foot distance restriction because it will limit his use of the lake, lead to accidental violations of the HRO, and be subject to arbitrary enforcement.  Scott's arguments are misguided.

6

First, the statute does not limit the district court's discretion regarding the scope of a distance restriction. *See* Minn. Stat. § 609.748 (2020). Second, the 500-foot restriction prohibits Scott from coming within 500 feet of Suess's *house*, not his *person*, and therefore the risk of "accidental encroachment" is low. Third, the restriction delineates where Scott can and cannot be in relation to Suess's home and is therefore not subject to arbitrary enforcement. Accordingly, Scott has not shown that the district court abused its discretion by imposing a 500-foot distance restriction.

Scott argues next that the district court abused its discretion by impermissibly prompting Suess to seek and ultimately imposing a two-year HRO. We are not persuaded for two reasons. First, an HRO "must be for a fixed period of not more than two years." Minn. Stat. § 609.748, subd. 5(b)(3). The statute therefore allows the district court to impose an HRO for up to two years. Second, Scott ignores the context of the district court's comment. At the HRO hearing, Suess requested a permanent HRO, and the district court responded that it could not impose a permanent HRO on this record. It interpreted Suess's request as one for a two-year HRO, which Suess confirmed. In light of this context, we conclude that the district court did not abuse its discretion by imposing a two-year HRO.

Finally, Scott complains that the district court did not express its reasons for imposing the 500-foot and two-year parameters. But he cites to no legal authority for this argument and has therefore forfeited it. *Scheffler v. City of Anoka*, 890 N.W.2d 437, 451 (Minn. App. 2017) (stating that "assignment of error based on mere assertion, unsupported by argument or authority, is forfeited"), *review denied* (Minn. Apr. 26, 2017).

7

**III.    The district court did not abuse its discretion by denying Scott's motion for a new trial and his request for a continuance.**

Scott argues that the district court should have granted a new trial because it limited his cross-examination of Suess, accepted hearsay evidence, and denied him the opportunity to submit rebuttal evidence at the HRO hearing.  He also argues that the district court should have granted a continuance to allow him time to find an attorney before proceeding with cross-examination at the motion hearing.  We are not persuaded.

**A.    Motion for new trial**

We review a district court's decision whether to grant a new trial for an abuse of discretion.  *E.g.*, *County. of Hennepin v. Laechelt*, 949 N.W.2d 288, 291 (Minn. 2020).  HRO proceedings, however, are special proceedings.  *Fiduciary Found., LLC ex rel. Rothfusz*, 834 N.W.2d 756, 761 (Minn. App. 2013), *review denied* (Minn. Sept. 17, 2013).  In special proceedings, a motion for a new trial is not authorized unless either (a) the statute authorizing that special proceeding states otherwise or (b) the special proceeding actually involves a trial.  *Schlitz v. City of Duluth*, 449 N.W.2d 439, 441 (Minn. 1990); *see Parson v. Argue*, 344 N.W.2d 431, 431 (Minn. App. 1984) (noting that if there was no trial, a motion for a new trial is an "anomaly").  The HRO statute, Minn. Stat. § 609.748, does not authorize a trial or a new trial.  And a district court cannot abuse its discretion by denying relief that is not authorized.  Accordingly, we affirm the district court's denial of Scott's request for a new trial.

Even if we consider Scott's arguments on the merits, they fail.  First, the district court allowed Scott to fully cross-examine Suess at the motion hearing.  Scott does not

challenge the adequacy of the second round of cross-examination. The district court therefore did not abuse its discretion by denying Scott's motion for a new trial and instead reopening the record to allow additional cross-examination. *See* Minn. R. Civ. P. 59.01, subd. 1 (allowing district court to "take additional testimony" on motions for new trial in non-jury cases); *Durand v. Durand*, 367 N.W.2d 621, 625 (Minn. App. 1985) (stating that district court may "receive additional evidence rather than grant a new trial if such a procedure will correct an error").

Second, Scott argues that he is entitled to a new trial because the district court allowed Suess's therapist's letter, which he contends is hearsay evidence. But he fails to cite any legal authority for this argument and has therefore forfeited it. *Scheffler*, 890 N.W.2d at 451.

Third, Scott argues that he is entitled to a new trial because the district court denied him an opportunity to present rebuttal evidence. His argument is not supported by the record, which shows that he had the opportunity to offer rebuttal evidence at both hearings. Further, "[e]ntitlement to a new trial on the grounds of improper evidentiary rulings rests upon the complaining party's ability to demonstrate prejudicial error." *Kedrowski v. Lycoming Engines*, 933 N.W.2d 45, 62 (Minn. 2019) (quotation omitted); *see also* Minn. R. Civ. P. 61 (requiring error to be ignored unless "inconsistent with substantial justice"). Even assuming that the district court denied Scott the opportunity to subpoena Suess's therapist or others on the pontoon, Scott does not discuss what those witnesses' testimony would have shown and therefore has not shown prejudice. Scott's claim that he was denied the opportunity to offer rebuttal evidence therefore fails on the merits.

### B.      Continuance

Scott argues that the district court should have granted him, as a self-represented litigant, a continuance to find representation rather than proceeding immediately with cross-examination at the motion hearing.  We will not reverse the district court's decision whether to grant a continuance absent a clear abuse of discretion.  *Dunshee v. Douglas*, 255 N.W.2d 42, 45 (Minn. 1977).  Scott cites *Kasson State Bank v. Haugen* for the proposition that the district court should allow a reasonable accommodation for a self-represented litigant.  410 N.W.2d 392, 395 (Minn. App. 1987).  In *Kasson*, we reversed the district court's denial of a continuance when the self-represented defendant had insufficient time to find an attorney because he was out of town for three weeks when the plaintiff served its motion on him.  *Id.*  Scott has no similar excuse for failing to find an attorney.  Rather, Scott, a licensed attorney, could have obtained counsel before either the HRO hearing or the motion hearing but nevertheless proceeded as a self-represented party.  The district court did not abuse its discretion by denying Scott's request for a continuance.

**Affirmed.**

Filed in District Court
State of Minnesota
7/31/2023 11:54 AM

**ARBITRATION**

---

Hoglund, Chwialkowski & Mrozik,
P.L.L.C. n/k/a Hoglund & Mrozik,
P.L.L.C.,

        Claimant,

v.

Kain & Scott, P.A. n/k/a LifeBack Law
Firm, P.A.,

        Respondent.

**FINAL AWARD**

---

On May 15, 2023, I issued an Interim Award on the merits of the disputed issues in this arbitration. Claimant Hoglund & Mrozik, P.L.L.C. (the "Hoglund Firm") now moves for an award of legal fees, costs, and pre-award interest. Respondent Lifeback Law Firm, P.A. formerly known as Kain & Scott, P.A. ("Kain & Scott") moves for correction or modification of the Interim Award. I conducted an oral hearing on both motions on July 10, 2023.

Shawn Perry, of Perry & Perry, PLLP, represents the Hoglund Firm. J. Matthew Berner, of Cameron Law Office Chartered, represents Kain & Scott.

Based on the record, I make the following findings, conclusions, and Final Award in addition to those in the Interim Award, which are incorporated by reference.

1

EXHIBIT
F

Filed in District Court
State of Minnesota
7/31/2023 11:54 AM

### I.    Kain & Scott's Motion to Modify or Correct Interim Award

The Interim Award denied most of both parties' claims but found in favor of the Hoglund Firm in two respects.  Kain & Scott now moves for a modification or correction of the Interim Award, seeking a reversal of any unfavorable ruling.

Kain & Scott bases its motion upon Minn. Stat. § 572B.20 (a) (2) and (3), which authorize the arbitrator to change an award "because the arbitrator has not made a final and definite award upon a claim submitted by the parties to the arbitration proceeding; or . . . to clarify the award."[1]

Kain & Scott does not identify where a final and definite award upon a claim was *not* made.  My 25-page decision addressed all major claims and denied any remaining claims.  The fact that it was labeled an "Interim Award" does not mean that I failed to rule finally on any pending claims.  It was a final award on the merits, but labeled an "interim" award so that, once fees, costs, and interest were

---

[1] Kain & Scott also cites Minn. Stat. § 572B.24 (a)(2), which provides that a court "shall modify or correct the award if . . . the arbitrator has made an award on a claim not submitted to the arbitrator and the award may be corrected without affecting the merits of the decision upon the claims submitted."  Finally, Kain & Scott relies on Minn. Stat. § 572B.23, which authorizes a court to vacate an award if "an arbitrator exceeded the arbitrator's powers."  Because both sections 572B.23 and 572.24 address actions to be taken by a court, they are inapplicable here.  Nevertheless, the issue in question is addressed below.

Filed in District Court
State of Minnesota
7/31/2023 11:54 AM

addressed, a single final award could be entered, rather than a Final Award and a Supplemental or Amended Final Award.

Kain & Scott comments that I did not specifically refer in the Interim Award to a couple of their expert reports, but I have no duty to recite every piece of evidence in my decision, especially where the parties agreed that only a reasoned award was requested, not detailed findings and conclusions. I reviewed each expert report submitted by both sides but did not rely on every one of them.

As for the motion to clarify, Kain & Scott does not articulate any part of the Interim Award that requires clarification. The fact that it may disagree with some of the rulings does not trigger a duty to clarify the award.

Kain & Scott's motion to modify or correct, as the Hoglund Firm observes, is essentially a motion for reconsideration. It seeks a reversal, in the guise of a modification or correction, of any unfavorable ruling based on the evidence submitted at the arbitration. Such a motion is not authorized by the arbitration statutes or any other authority.

Both parties acknowledge that "[a]s to the merits of a dispute . . . the arbitrator is to be the final judge of both law and fact." *Hennepin Healthcare Sys., Inc. v. AFSCME Minnesota Council 5, Union*, 990 N.W.2d 454, 459 (Minn. 2023) (citation omitted). Kain & Scott recites evidence in its favor and asks me to

3

Filed in District Court
State of Minnesota
7/31/2023 11:54 AM

reverse my adverse rulings.  Having weighed the conflicting evidence, I made my

judgments about the facts and the law and find nothing in Kain & Scott's

submissions that would warrant a reversal.

Under provisions applicable to motions before a court, *see* note 1 above,

Kain & Scott makes a separate argument that I exceeded my powers by deciding

an issue not submitted to me, namely, the limited injunctive relief precluding Kain

& Scott "from advertising that it has locations or bankruptcy teams in places where

it has no offices or lawyers."  Interim Award at 24.  This issue was raised in the

Hoglund Firm's Second Amended Complaint, discussed at the hearing, and

debated in both parties' pre- and post-hearing briefs.  Accordingly, the issue was

submitted for decision, and I did not exceed my powers by deciding it.

In summary, Kain & Scott's motion to modify or correct the Interim Award

is denied.

## II.    The Hoglund Firm's Application for Fees, Costs, and Interest

A.  Legal Fees

The Hoglund Firm seeks an award of $220,521.15 in attorneys' fees.  Kain

& Scott opposes any fee award on several grounds.

Although other claims by Hoglund could have been a basis for a fee award,

the only claim for which fees were granted was its false advertising claim under

27-CV-23-12157
Filed in District Court
State of Minnesota
7/31/2023 11:54 AM

the Minnesota statute, which triggered a claim for fees under Minn. Stat. § 8.31,

subd. 3a. Fees of a successful claimant are allowed under this statute when the

public benefits from the claim. The Hoglund Firm's lawsuit benefitted the public

because of the injunctive relief granted for false advertising to the public. *Collins*

*v. Minnesota School of Business, Inc.*, 655 N.W.2d 320 (Minn. 2003).

The problem in assessing the fees to be awarded in this case is that this false

advertising claim was only a part of the overall lawsuit. The Hoglund Firm

acknowledges this and endeavors to narrow its fee claim accordingly.

Before the post-hearing motions above, the Hoglund Firm's counsel

("Counsel") spent 685 hours on the case and a paralegal spent 23 hours (all hours

and dollar figures in this decision are rounded). Counsel eliminated all time spent

before any false advertising claim was made (which included all paralegal time)

and reduced the remainder by 10% for the time spent on the click-fraud claim

thereafter, yielding 479 hours by Counsel allocable to false advertising claims.

The Hoglund Firm requests no further reduction for unsuccessful false advertising

claims or defending against all of Kain & Scott's false advertising claims,

contending that all false advertising claims "involve a common core of facts" and

are "based on related legal theories." In addition, Counsel claims that most of his

time was devoted generally to the litigation as a whole. All of these contentions

are based on language in *650 N. Main Ass'n v. Frauenshuh, Inc.*, 885 N.W.2d 478,

Filed in District Court
State of Minnesota
7/31/2023 11:54 AM

497 (Minn. Ct. App. 2016).   If those circumstances exist, that case cautions against reducing the fee award "simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  *Id.*

Minnesota uses the "lodestar" approach in awarding legal fees.  I find that a reasonable hourly rate for Counsel is $450, above the discounted rate he charged the Hoglund Firm, and below some of the rates he has been awarded in other cases. That is an eminently reasonable rate in this community for someone with Counsel's considerable experience and expertise.  Counsel did all the legal work himself, which precludes delegation of some tasks to a lower billing rate but avoids the risk of duplication of effort.

In addition to the click-fraud claims, the Hoglund Firm made several false advertising claims and acknowledges that the one on which it prevailed was not one of its "key" claims, but it correctly observes that the claims were related. Another factor warranting a reduction is that section 8.31 provides a remedy, including fees, only for successful claimants -- it does not authorize fees for defending against counterclaims.  The click-fraud claim was a much more substantial part of this case than the Hoglund Firm acknowledges.  Taking all these factors into account, the Hoglund Firm is entitled to recover for 125 hours of Counsel's time (at $450 per hour), a total of $56,250.   Counsel spent an additional

Filed in District Court
State of Minnesota
7/31/2023 11:54 AM

15 hours on the post-trial motions but for the same reasons noted above, I will

award only an additional four hours, or $1800.  The total fees award is $58,050.

B. Costs and Disbursements.

The Hoglund Firm seeks $66,262 in costs and disbursements, plus any

additional arbitrator's fees incurred beyond the initial deposit of $12,250.  Most of

the costs are for expert fees, the balance consisting of deposition expenses,

arbitrator's fees, and miscellaneous court fees.  Kain & Scott does not challenge

any particular cost or disbursement as unreasonable.  All are reasonable.

Kain & Scott makes two arguments regarding costs and disbursements.

First, it disputes that the Hoglund Firm is the prevailing party under the costs and

disbursements statutes.  *See* Minn. Stat. § 549.02 and 549.04.  While the Hoglund

Firm prevailed on all of Kain & Scott's counterclaims, it also prevailed on two of

its affirmative claims.  Kain & Scott prevailed on only some of the Hoglund Firm's

affirmative claims.   Kain & Scott has shown no reason to reconsider my earlier

determination that the Hoglund Firm was the prevailing party.

Second, Kain & Scott contends that all costs and disbursements should be

denied because no allocation has been made regarding the Hoglund Firm's

successful and unsuccessful claims.  The implicit premise of this argument is that a

prevailing party cannot recover for costs and disbursements relating to

7

Filed in District Court
State of Minnesota
7/31/2023 11:54 AM

unsuccessful claims.  Kain & Scott cites no authority for this proposition and I have found none.  The "prevailing-party" determination is made based on the overall net result, not on a claim-by-claim basis.  I therefore decline to require or engage in separate determinations of whether (or how much) each expense item is attributable to either a successful claim made or counterclaim denied.

The Hoglund Firm is entitled to recover its costs and disbursements of $66,187 ($66,262 less a $75 refund for unused arbitrator's fee deposit).  The fact that the costs and disbursements exceed the legal fees awarded is of no moment, as this merely reflects the different standards in awarding fees versus costs.  The latter is akin to all or nothing, while the former is not.

C. Pre-Award Interest.

The Hoglund Firm is entitled to 10% pre-award interest on its recovery of $70,000 in damages.  Minn. Stat. § 549.09, subd. 1(b) and (c)(2).  Interest runs from January 21, 2019, the date this action was commenced in district court, to the date of the award.  *Id.*  Kain & Scott does not dispute the Hoglund Firm's calculation of interest and I have verified it and extended it to the date of this Final Award.   At $19.18 per day x 1648 days, the result is $31,609 in pre-award interest.

Filed in District Court
State of Minnesota
7/31/2023 11:54 AM

D. <u>Post-Award Interest</u>.

The Hoglund Firm is also entitled to 10% interest on the full amount owed, including attorneys' fees, costs, and prejudgment interest, from the date of the Final Award until paid.  Minn. Stat. § 549.09, subd. 2.

## FINAL AWARD

1. Claimant Hoglund, Chwialkowski & Mrozik, P.L.L.C. n/k/a Hoglund & Mrozik, P.L.L.C. is entitled to recover $70,000 from Respondent Kain & Scott, P.A. n/k/a LifeBack Law Firm, P.A.;

2. Respondent Kain & Scott, P.A. n/k/a LifeBack Law Firm, P.A. is restrained and enjoined from advertising that it has locations or bankruptcy teams in places where it has no offices or lawyers.

3. Claimant is entitled to recover its reasonable attorneys' fees of $58,050 and reasonable costs and disbursements of $66,187;

4. Claimant is entitled to recover pre-award interest of $31,609;

5. Claimant is entitled to recover post-award interest at the annual rate of 10% on the unpaid amount of damages, fees, costs and disbursements, and pre-award interest; and

6. All other claims and counterclaims by either party are denied.

July 28, 2023

*Thomas Fraser*

Thomas Fraser, Arbitrator

27-CV-23-12137

STATE OF MINNESOTA

DISTRICT COURT

COUNTY OF HENNEPIN

FOURTH JUDICIAL DISTRICT

Case Type:  Other-Civil

Hoglund, Chwialkowski & Mrozik, P.L.L.C.
n/k/a Hoglund & Mrozik, P.L.L.C.,

The Honorable Francis J. Magill
Court File No. 27-CV-23-12137

Plaintiff,

v.

**PLAINTIFFS' PROPOSED FINDINGS OF
FACT, CONCLUSIONS OF LAW, AND
ORDER FOR JUDGMENT**

Kain & Scott, P.A. n/k/a LifeBack Law Firm,
P.A.,

Defendant.

This matter is before the Court on Plaintiff's Motion to Confirm Arbitration Awards and

Defendant's Motion ("Motion to Confirm") to Vacate Arbitration Awards ("Motion to Vacate")

issued by Retired Hennepin County Judge Thomas Fraser ("Judge Fraser"), and Plaintiff's Motion

for Attorneys' Fees, Costs, and Entry of Judgment.

On January 22, 2024, the Court issued its Order granting Plaintiff's Motion to Confirm and

denying Defendant's Motion to Vacate and granted leave for Plaintiff to apply for an award of

reasonable attorneys' fees and costs pursuant to Minn. Stat. § 572B.25 (b) and (c). ("Confirmation

Order").

Plaintiff filed its Motion for Attorneys' Fees, Costs, and Entry of Judgment on January 29,

2024 with a request to decide the motion on the papers and without a hearing ("Motion for Fees

and Judgment"). Defendant did not a response to Plaintiff's Motion for Fees and Judgment.

The Motion for Fees and Judgment was heard on April 25, 2024.  Shawn Perry, Esq.

appeared on behalf of Plaintiff and John M. Berner, Esq. appeared on behalf of Defendant.

**EXHIBIT
G**

Based upon all files and proceedings herein the Court now makes the following:

## FINDINGS OF FACT

1.      This case came before the Court on Plaintiff's Motion to Confirm and Defendant's Motion to Vacate.  Both motions were heard at the same time on October 24, 2023.

2.      On January 22, 2024, the Court entered its Order granting Plaintiff's Motion to Confirm, denying Defendant's Motion to Vacate, and granting Plaintiff leave to apply for an award of reasonable attorneys' fees and costs pursuant to Minn. Stat. § 572B.25 (b) and (c).

3.      Judge Fraser issued a May 15, 2023 Interim Award (Court Index No. 22) and a July 28, 2023 Final Award (Court Index No. 23) in this matter. The Interim and Final Awards were confirmed in full by this Court's Confirmation Order on January 22, 2024.  The awards are incorporated herein by this reference as if fully set forth in these Findings of Fact and are attached hereto as **Exhibits A and B**, respectively.

4.      Judge Fraser awarded $70,000 in compensatory damages to Plaintiff against Defendant on Plaintiff's claim of tortious interference with contract.  Specifically, Judge Fraser found in part that, "I find that from at least late 2017 through January 2019, when Kain & Scott was served with the lawsuit, Kain & Scott intentionally and repeatedly clicked on the Hoglund Firm's ads for the purpose of causing harm to the Hoglund Firm." (Interim Award at 3-7; Final Award, ¶ 1 at 9).

5.      Judge Fraser awarded Plaintiff reasonable attorneys' fees of $58,050 and reasonable costs and disbursements of $66,187 incurred during the Arbitration. (Final Award, ¶ 3 at 9).

6.      Judge Fraser awarded Plaintiff pre-award interest of $31,609.  (Final Award, ¶ 4 at 9).

2

7.     Judge Fraser awarded Plaintiff post-award interest at the annual rate of 10% on the unpaid damages, fees, costs and disbursements, and pre-award interest from July 29, 2023 until the award is satisfied in full.  (Final Award, ¶ 5 at 9).

8.     In summary, the total monetary award as of July 28, 2023 was as follows:

| Item | Amount |
|------|--------|
| Compensatory Damages | $70,000.00 |
| Reasonable Attorneys' Fees | $58,050.00 |
| Reasonable Costs and Disbursements | $66,187.00 |
| Pre-award interest | $31,609.00 |
| **Total as of July 28, 2024** | **$225,846.00** |

9.     Judge Fraser found that Plaintiff is entitled to the following injunctive relief under both the federal Lanham Act and the Minnesota Deceptive Trade Practices Act, for the false advertising by Defendant: "Respondent Kain & Scott, P.A. n/k/a LifeBack Law Firm, P.A. is restrained and enjoined from advertising that it has locations or bankruptcy teams in places where it has no offices or lawyers." (Final Award, ¶ 2 at 9).

10.    Judge Fraser found Defendant failed to prove any of its counterclaims and denied the counterclaims in their entirety. (Interim Award at 20-25; Final Award, ¶ 6 at 9).

11.    The Court has granted Plaintiff leave to move for reasonable attorneys' fees and costs pursuant to Minn. Stat. § 572B.25 (b) and (c).  (See, Confirmation Order, ¶ 3 at p. 1 and Memorandum at p. 12).

12.    Plaintiff submitted its Motion for Attorneys' Fees, Costs, and Entry of Final Judgment on January 29, 2024, with a request to decide the motion on the papers and without a hearing ("Motion for Fees and Judgment").   The request to decide the motion on the papers was denied and the motion was heard on April 25, 2024.

13.    The Court has carefully considered Plaintiff's submissions in support of Plaintiff's Motion for attorneys' fees and costs.

3

14.     Plaintiff's motion for attorneys' fees and costs is supported by the Declaration of Shawn M. Perry and is based on contemporaneous time records demonstrating that Mr. Perry invested 45.80 hours of work in connection with the Motions to Confirm and Vacate. The request excludes hours that were not exclusively devoted to said motions and excludes the work for the instant Motions for Attorneys' Fees, Costs, and Entry of Judgment.

15.     In assessing the award of attorneys' fees under fee shifting statutes, Minnesota courts apply the lodestar method. *Green v. BMW of N. Am., LLC*, 826 N.W.2d 530, 536 (Minn. 2013).

16.     Plaintiff proposes using a rate of $450 per hour to calculate the lodestar in this matter as opposed to the discounted rate of $375 per hour billed to Plaintiff. This is the same rate that Judge Fraser used for his award of attorneys' fees in his Final Award. (See, Judge Fraser's analysis in the Final Award, Court Index No. 23 at p. 6).

17.     The proposed hourly rate of $450 per hour is Mr. Perry's usual and customary hourly rate charged for other similar matters charged to clients since 2019. Mr. Perry has been awarded attorneys' fees by at least two federal district courts at rates greater than or equal to $550 per hour dating back to 2011 and 2017 and by an American Arbitration Panel in February 2023. $450 per hour is reasonable given the complexity of this case, the work involved, and Mr. Perry's experience and expertise.

18.     The Court finds that 45.80 hours is reasonable and customary for bringing the Motion to Confirm and opposing the Motion to Vacate. Opposing the Motion to Vacate was a particularly large task given the lengthy memoranda and thousands of pages of supporting materials filed by Defendant.

19.     The Court finds that Plaintiff's request for costs in the amount of $462.00 consisting

4

of the Court filing and motion fees are reasonable and necessary.

20.     Defendant did file a response to the motion, nor did it contest the motion at the April 25, 2024 hearing. Instead, Defense Counsel indicated that Defendant plans to file a bankruptcy petition, but that has not yet occurred.

## CONCLUSIONS OF LAW

1.     This Court confirmed Judge Fraser's Arbitration Awards in their entirety in its January 22, 2024 Confirmation Order, which is incorporated by this reference.

2.     Plaintiff is entitled to recover $225,846.00 as awarded by Judge Fraser in his July 28, 2023 Final Award.

3.     Pursuant to the Final Award and Minn. Stat. § 549.09, subds. 1 and 2, Plaintiff is entitled to recover post-award interest at the rate of 10% per annum simple interest on the monetary award of $225,846.00 from July 28, 2023 through the date of entry of judgment by this Court. *See*, *Creekview of Hugo Ass'n, Inc. v. Owners Ins. Co.*, 386 F. Supp. 3d 1059, 1072 (D. Minn. 2019) (post-judgment interest is calculated on the entire judgment); *Seagate Tech., LLC v. W. Digital Corp.*, No. A15-0760, 2016 WL 281218, at *4 (Minn. Ct. App. Jan. 25, 2016) (collecting cases).

4.     Pursuant to Minn. Stat. § 572B.25 (b) and (c), Plaintiff shall be also entitled to recover its reasonable and necessary attorneys' fees in the amount of $20,610.00 (45.80 hours x $450.00 per hour) from Defendant as the prevailing party for bringing Plaintiff's Motion to Confirm and opposing Defendant's Motion to Vacate.

5.     Pursuant to Minn. Stat. § 572B.25 (b) and (c), Plaintiff shall also be entitled to recover its reasonable and necessary costs in the amount of $462.00.

6.     Pursuant to the Final Award and Minn. Stat. § 549.09, subds. 1 and 2, Plaintiff shall be entitled to post-judgment interest of 10% per annum simple interest from the date judgment is

entered until paid.

7.      Pursuant to Judge Fraser's Interim and Final Awards, Defendant is restrained and enjoined from advertising that it has locations or bankruptcy teams in places where it has no offices or lawyers.

8.      Pursuant to Judge Fraser's Interim and Final Awards, Defendant's counterclaims are denied in their entirety.

9.      Pursuant to Minn. Stat. § 572B.25 (a), Plaintiff is entitled to entry of judgment for the relief awarded herein.

## ORDER FOR JUDGMENT

Based on the Findings of Fact and Conclusions of Law, IT IS HEREBY ORDERED that judgement be entered as follows:

1.      This Court's January 22, 2024 Confirmation Order is incorporated by this reference as if set forth in full herein.

2.      The Interim and Final Arbitration Awards attached hereto as Exhibits A and B are incorporated by this reference as if set forth in full herein.

3.      Plaintiff is entitled to recover $225,846.00 as of July 28, 2023.

4.      Minn. Stat. § 549.09, subds. 1 and 2, Plaintiff shall be entitled to post-award interest at the rate of 10% per annum simple interest on the monetary arbitration award of $225,846.00 from July 28, 2023, through the date of entry of judgment by this Court. The district court administrator is ordered to calculate the amount and insert it into the final judgment.

5.      Plaintiff shall be entitled to recover its reasonable and necessary attorneys' fees in the amount of $20,610.00 from Defendant as the prevailing party with respect to bringing Plaintiff's Motion to Confirm and opposing Defendant's Motion to Vacate.

6.      Plaintiff shall be entitled to recover its reasonable and necessary costs in the amount of $462.00 with respect to bringing Plaintiff's Motion to Confirm and opposing Defendant's Motion to Vacate.

7.      $21,072.00 ($20,610.00 + $462.00) for the attorneys' fees and costs awarded in paragraphs 5 and 6 of this Order for Judgment shall be inserted into the final judgment.

8.      Plaintiff shall be entitled to post-judgment interest of 10% per annum simple interest on the sum of the entire judgment entered pursuant to paragraphs 3 through 7 of this Order for Judgment from the date judgment is entered until paid in full.

9.      A summary of the final monetary judgment to be entered herein is as follows:

| Item | Amount |
| --- | --- |
| Total monetary Arbitration Award as of 7/28/2023 | $225,846.00 |
| Post-Award Interest from 7/28/2023 to entry of final judgment ($225,846.00 at 10% simple interest per annum) | To Be Determined by Court Administrator |
| Reasonable Attorneys' Fees and Costs for Motions to Confirm and Vacate | $21,072.00 |
| Post-Judgment interest after entry of final judgment until paid at 10% simple interest per annum | To Be Determined |

10.      Defendant is restrained and enjoined from advertising that it has locations or bankruptcy teams in places where it has no offices or lawyers.

11.      Defendant's counterclaims are denied in their entirety and are dismissed with prejudice and on the merits.

12.      Judgment shall be entered forthwith and shall not be subject to the automatic stay of Minn. R. Gen. Prac. 125.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:

_____

The Honorable Francis J. Magill
Judge of District Court



8

<table>
<tr><td colspan="2" style="background:black;color:white"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor 1</td><td>LIFEBACK LAW FIRM P.A</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>District of MINNESOTA</td></tr>
<tr><td>Case number</td><td>24-60191</td></tr>
</table>

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed.** That date is on the notice of bankruptcy (Form 309) **that you received.**

### Part 1: Identify the Claim

**1. Who is the current creditor?**
Department of Treasury - Internal Revenue Service
Name of the current creditor (the person or entity to be paid for this claim)

Creditor Number : 63165121

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**
☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Internal Revenue Service<br>Name | Internal Revenue Service<br>Name |
| P.O. Box 7346<br>Number        Street | Insolvency  3101 Constitution Dr, M/S 5000 SPD<br>Number        Street |
| Philadelphia        PA        19101-7346<br>City        State        ZIP Code | Springfield        IL        62704<br>City        State        ZIP Code |
| Contact phone 1-800-973-0424 | Contact phone (217) 993-6585 |
| Contact email _____ | Contact email Kris.Alverson@irs.gov |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

**4. Does this claim amend one already filed?**
☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**
☑ No
☐ Yes. Who made the earlier filing? _____



EXHIBIT H

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: See Attachment___ ____

**7. How much is the claim?**

$_____219,202.62_  **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Taxes_____

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☑ Yes. Identify the property: See attachment_____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ No

☑ Yes. *Check one:*

| | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ 217,537.35 |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |

\* Amounts are subject to adjustment on 04/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/08/2024
                   MM / DD / YYYY

/s/ KRIS L ALVERSON
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| | | |
|---|---|---|
| Name | KRIS L | ALVERSON |
| | First name        Middle name | Last name |
| Title | Bankruptcy Specialist | |
| Company | Internal Revenue Service | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | Insolvency  3101 Constitution Dr, M/S 5000 SPD | |
| | Number        Street | |
| | Springfield | IL    62704 |
| | City | State    ZIP Code |
| Contact phone | (217) 993-6585 | Email  Kris.Alverson@irs.gov |

# Proof of Claim for Internal Revenue Taxes



**Form 410**
Attachment

Department of the Treasury/Internal Revenue Service

**In the Matter of:** LIFEBACK LAW FIRM P.A

FKA KAIN & SCOTT PA
13 7TH AVENUE SOUTH
SAINT CLOUD, MN 56301

**Case Number**
24-60191

**Type of Bankruptcy Case**
CHAPTER 11

**Date of Petition**
04/28/2024

The United States has the right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

## Unsecured Priority Claims    under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
|---|---|---|---|---|---|
| XX-XXX3297 | WT-FICA | 12/31/2021 | 1 1-ESTIMATED-SEE NOTE | $76,426.63 | $11,578.72 |
| XX-XXX3297 | WT-FICA | 06/30/2023 | 09/18/2023 | $54.74 | $3.26 |
| XX-XXX3297 | WT-FICA | 09/30/2023 | 01/15/2024 | $0.00 | $0.00 |
| XX-XXX3297 | WT-FICA | 03/31/2024 | 2 D-ESTIMATED-SEE NOTE | $110,401.00 | $0.00 |
| XX-XXX3297 | WT-FICA | 06/30/2024 | 3 C-ESTIMATED-SEE NOTE | $19,073.00 | $0.00 |
| | | | | $205,955.37 | $11,581.98 |

**Total Amount of Unsecured Priority Claims:**   $217,537.35

## Unsecured General Claims

Penalty to date of petition on unsecured priority claims (including interest thereon) . . . . . .$1,665.27

**Total Amount of Unsecured General Claims:**   $1,665.27

1 LIABILITY IS ESTIMATED BASED ON AVAILABLE INFORMATION BECAUSE THE RETURN HAS NOT BEEN FILED. THIS CLAIM MAY BE AMENDED AS NECESSARY AFTER THE DEBTOR FILES THE RETURN OR PROVIDES OTHER REQUIRED INFORMATION.
2 LIABILITY IS ESTIMATED BASED ON AVAILABLE INFORMATION BECAUSE THE RETURN HAS NOT BEEN FILED. THIS CLAIM MAY BE AMENDED AS NECESSARY AFTER THE DEBTOR FILES THE RETURN OR PROVIDES OTHER REQUIRED INFORMATION.
3 LIABILITY IS ESTIMATED BASED ON AVAILABLE INFORMATION BECAUSE THE RETURN HAS NOT BEEN FILED. THIS CLAIM MAY BE AMENDED AS NECESSARY AFTER THE DEBTOR FILES THE RETURN OR PROVIDES OTHER REQUIRED INFORMATION.



# HOGLUND LAW REVIEWS BY REAL CUSTOMERS

Posted by Col Ovik on May 12, 2024 at 5:30 AM



Post        Share      ⋮ **Share** 1

---

   Over the years, I have seen many reviews written by angry clients of Hoglund Law. Many complained about the fact that Hoglund Law claimed to be "local" and one said were "states away".  These are heartbreaking reviews to read when the person is already vulnerable and often sick. It doesn't help when Hoglund Law admits to using software to mask bad reviews by angry clients who felt duped by Hoglund Law. The software is designed to "gate" bad reviews (i.e. not publish bad reviews) and only publish good reviews. It's a slimy tactic that should be banned and is unbecoming of a law office in Minnesota.

EXHIBIT I

But not all Hoglund Reviews are "gated". Some clients persist and insist their review get published and circumvent Hoglund Law's software to block bad reviews.

Here is a Hoglund Law Review where the Hoglund Law client gives a review of Hoglund Law and Robert Hoglund, "himself":





"we barely had communication with him (Referring to Robert Hoglund) and when we did he was very rushed." ...."I absolutely hated our entire experience. Save yourself and go somewhere else." "Save yourself and go somewhere else". Wow!

That is a powerful Hoglund Law Review left by a former Hoglund Law client (And Robert Hoglund "himself").  Many other Hoglund Law Google Reviews are just as scathing.

Here is another Hoglund Law Review that is just as scathing:



"…I will purposely steer people away from this place (Hoglund Law) for being dishonest scoundrels." Ouch!

And here is a Hoglund Law Review by a person who states: "…and their claims of having local offices are just plain false":



The bottom line is before hiring Hoglund Law, read their Hoglund Reviews closely. These stinging reviews made it through Hoglund Law's slimy attempt to block bad reviews from being published.

When you look at Hoglund Law Reviews, notice the intensity with which some people tell you to go somewhere else. Reviews are a potent tool for the public to 1) voice their opinion and 2) select a law firm. Hoglund Law knows this because the firm uses software to gate bad Hoglund Law Reviews from showing to the public.

When a law firm blocks bad Hoglund Law Reviews from appearing, you are distorting your firm's Google Review strength in reality. This doesn't seem right and should not stand. For example, if Hoglund Law didn't gate bad reviews (block bad Hoglund Law Reviews), it is possible their Google Review strength would be far lower, perhaps less than 2.5 Google Stars. But blocking bad Hoglund Law Reviews artificially props up the Google Review strength, so it is higher than, say, 4.5.

# CALL NOW FOR A FREE STRATEGY SESSION FROM AN MN BANKRUPTCY LAWYER AT LIFEBACK LAW FIRM

After reading Hoglund Law reviews like the ones in this blog you will be happy to know there is a firm that never has and never will block bad reviews. If you want to choose a Minnesota bankruptcy law firm that has never used, nor ever will use, software to gate bad reviews, reach out to the firm that is the most kind and helpful bankruptcy law firm (based on what people say in our reviews) by going now to www.lifebacklaw.com. You will be so thankful you did.



Topics: Hoglund Law Reviews, Hoglund Law Attorney Reviews

# TAKE THE FIRST STEP TOWARD
# GETTING YOUR LIFE BACK

Let us help you get started on your road to a debt-free life

## SIGN UP FOR A FREE CONSULTATION

# LIFEBACK LAW FIRM OFFICES

## Brainerd

211 4th Street

South Brainerd, MN 56401

**(218) 822-3300**

## Duluth

11 East Superior Street, 5th floor, suite 532, Duluth, MN 55802

**(218) 822-4502**

## Eagan

4480 Erin Drive

Eagan, MN 55122

**(612) 843-0525**

## Eden Prairie

7525 Mitchell Road Suite 208

Eden Prairie, MN 55344

**(612) 843-0524**

## Maple Grove

6445 Sycamore Court North

Maple Grove, MN 55369

**(612) 843-0529**

## Minneapolis

2124 Dupont Ave South S, Suite 103

Minneapolis, MN 55405

**(612) 843-0527**

## St. Cloud

13 7th Ave S

St Cloud, MN 56301

**(320) 252-0330**

## St. Paul

370 Selby Avenue, Suite 224,

St. Paul, MN 55102

**(612) 843-0523**

## MN BANKRUPTCY

Chapter 7

Chapter 13

## ABOUT US

Attorneys

Staff

Why Choose Us

Lifeback's Guarantee

Testimonials

Careers

## RESOURCES

MN Professionals (Clients Only)

U.S. Bankruptcy Code

Helpful Links

Blog

Contact Us

## BANKRUPTCY COURSES

Course 1

Course 2

# PAY YOUR BILL ONLINE

# (800) 551-3292

© 2023 Lifeback Law Firm, P.A. | Disclaimer | Privacy Policy | Sitemap

Law Firm Marketing by Gorilla Webtatics.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

---

In re:                                                          BKY Case No.: 24-60191
                                                                               Chapter 11
LifeBack Law Firm, P.A.,

                         Debtor.

---

**MEMORANDUM IN SUPPORT OF MOTION FOR REMOVAL OF DEBTOR IN
POSSESSION AND OTHER RELIEF**

---

**INTRODUCTION**

On April 28, 2024, Lifeback Law Firm, P.A. ("**Debtor**") filed for Chapter 11 bankruptcy

protection, under Subchapter V. Wesley Scott ("**Scott**") is the President of the Debtor and is the

reason that this bankruptcy case became necessary. As detailed in the Verified Notice of Hearing

and Motion, Scott, due to his history of mismanagement and irrational decisions, should no longer

be allowed to control the Debtor. The Debtor should lose its debtor in possession ("**DIP**") status

per 11 U.S.C. § 1185.

**ARGUMENT**

A. <u>Legal Standard</u>

The case of *In re Corinthian Communications, Inc.*, 642 B.R. 2022 (Bankr. S.D. N.Y. 2022)

set forth the considerations for a motion made pursuant to 11 U.S.C. § 1185 as follows:

> Under Subchapter V, the term "debtor in possession" refers to "the debtor, unless removed
> as debtor in possession under section 1185(a)." 11 U.S.C. § 1182(2). Section 1185(a) of the
> Bankruptcy Code provides the following:
>
> > On request of a party in interest, and after notice and a hearing, the court shall order
> > that the debtor shall not be a debtor in possession for **cause, including fraud,
> > dishonesty, incompetence, or gross mismanagement of the affairs of the debtor,
> > either before or after the date of commencement of the case**, or for failure to
> > perform the obligations of the debtor under a plan confirmed under this subchapter.

*Id*. § 1185(a) (emphasis added).

If a debtor is removed as debtor in possession, the Subchapter V Trustee's duties are expanded under section 1183(b)(5) to include, amongst other duties, "operating the business of the debtor." *Id.* § 1183(b)(5).

….

Under section 1183(b)(2) of the Bankruptcy Code, the Court may "for cause and on request of a party in interest, the trustee, or the United States trustee" §§*Id.* § 1183(b)(2). Sections 1106(a)(3) and (4) provide, in relevant part, that the trustee shall:

> (3) ... investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan; [and]
>
> (4) as soon as practicable—
>
> (A) file a statement of any investigation conducted under paragraph (3) of this subsection, including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate;

*Id.* § 1106(a).

The Bankruptcy Code does not specify what constitutes "cause" for the Court to expand a Subchapter V Trustee's duties under section 1183(b)(2). *Id.* § 1183(b)(2). Collier provides that the standard for cause under section 1183(b)(2) "should not be higher than the standard for cause ... [f]or removing a subchapter V debtor in possession under section 1185[a]." 8 COLLIER ON BANKRUPTCY ¶ 1183.03[3] (16th ed. 2022). The Court located one decision in which a bankruptcy court expanded a Subchapter V Trustee's duties under section 1183(b)(2) where there existed "the potential issue of intercompany claims." See *In re AJEM Hosp., LLC*, No. 20-80003, 2020 WL 3125276, at *1 (Bankr. M.D. N.C. Mar. 23, 2020); see also Hon. Paul W. Bonapfel, A GUIDE TO THE SMALL BUSINESS REORGANIZATION ACT OF 2019 (Revised June 2022) (the "GUIDE") at 82 n.196 (noting that if there are substantial issues about potential insider claims, the court may consider expanding a Subchapter V Trustee's duties to authorize the Subchapter V Trustee to investigate the potential claims and file a report). "Cause" to expand a Subchapter V Trustee's duties is also likely to exist where there are "significant questions such as the debtor's true financial condition, what property is property of the estate, the debtor's management of the estate as debtor in possession, and the accuracy and completeness of the debtor's disclosures and reports." GUIDE at 57 (citing *In re Ozcelebi*, 639 B.R. 365, 383 (Bankr. S.D. Tex. 2022)).

A court may sua sponte issue an order expanding the Subchapter V Trustee's duties under section 1183(b)(2), even though the subsection contains the phrase "on request of a party in interest." See *In re Pittner*, 638 B.R. 255, 259 (Bankr. D. Mass. 2022) ("Though [section 1185(a)] begins 'on request of a party in interest, § 105(a) of the Bankruptcy Code makes clear that the Court may raise the issue sua sponte."); see also *In re Ozcelebi*, 639 B.R. at

425 (issuing an order providing that the court would sua sponte consider whether the debtor should be removed under section 1185(a)).

*Id.*, at 232-34.

Judge Tanabe, in a South Dakota decision dealing with similar issues, held that, "Courts "have frequently identified other factors that support a finding of cause [under §§ 1112(b)(1) or 1185(a)] including where the debtor in possession has a conflict of interest in properly investigating and pursuing potential fraudulent transfers and other claims of the estate." *In re Duling Sons, Inc.*, 650 B.R. 578, (Bankr. D. S.D. 2023) citing *In re No Rust Rebar, Inc.*, 641 B.R. 412, 423 (Bankr. S.D. Fla. 2022) (citing *In re Picacho Hills Utility Co., Inc.*, 518 B.R. 75, 82 (Bankr. D.N.M. 2014), and *In re Ashley River Consulting, LLC*, No. 14-13406 (MG), 2015 WL 1540941, at *9 (Bankr. S.D.N.Y. Mar. 31, 2015) (internal quotations omitted)). An incurable conflict is created where a principal of a debtor "would have to investigate, and if necessary, sue himself and his own entities." *Id.*, citing *In re No Rust Rebar*, 641 B.R. at 425.

B.  <u>The Debtor Should be Removed as a Debtor in Possession</u>

The Notice of Hearing contains a litany of facts which merit the termination of the debtor in possession status of the Debtor.  The primary problem is that Scott in charge of the Debtor's operations and that Scott has triggered virtually every trigger for removal of DIP status.  Again, § 1185 allows for termination of DIP status upon "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor, either before or after the date of commencement of the case."  Each item listed in the Notice of Hearing relates to these considerations.  In short, Scott has lacked self-control and has been dishonest and abusive to the co-owners of the Debtor.  He has lied to the police and in court pleadings.  For instance, Scott denied Hoglund's allegation of click fraud despite it being readily provable that Scott was the one engaged in that endeavor.

Kain and Henehan could restate the allegations contained in the Notice of Hearing but will refrain from doing so. It is clear that Scott is unfit to lead the Debtor. Unfortunately, § 1104 does not apply allowing for the appointment of trustee. 11 U.S.C. § 1181. Section 1185 and its interplay with other sections of Subchapter V allows for the Subchapter V trustee to operate the Debtor. In the event that the Subchapter V trustee does not desire to operate the Debtor himself, he could employ a chief restructuring officer or the like. See, i.e., *In re Park Supply of America, Inc*., Bankr. No. 22-40003 (financial consultant and chief restructuring officer retained by debtor in Subchapter V case.).

It should be noted, too, that the Debtor should investigate claims asserted by Scott and potential avoidance against Scott. This will not occur with Scott at the helm of this reorganization.

Movants suggest that should the Subchapter V trustee not desire to operate the debtor, that he consider retaining a bankruptcy professional to assist with Debtor's operations. One suggestion would be panel trustee Erik Ahlgren, who also has experience operating corporate entities and law practices. The Subchapter V Trustee's duties should be expanded, as well, to include the powers specified in 11 U.S.C. §§ 1106(a)(3) and (4).

## CONCLUSION

Scott has proven that he is unable to operate the Debtor or act fairly and honestly. The Debtor's time in Chapter 11 should not be steered by the very individual who singlehandedly caused the situation. Therefore, the Debtor should be immediately removed as the debtor in possession pursuant to 11 U.S.C. § 1185.

9270005v2

MOSS & BARNETT
A Professional Association

Dated: May 13, 2024                    By  _s/ Matthew R. Burton_____
                                          Matthew R. Burton (#210018)
                                       150 South Fifth Street, Suite 1200
                                       Minneapolis, MN 55402
                                       Telephone: (612) 877-5000
                                       Email: matthew.burton@lawmoss.com
                                       ATTORNEYS FOR WILLIAM KAIN AND
                                       MARGARET HENEHAN

5

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:                                                                 BKY Case No.: 24-60191
                                                                                    Chapter 11
LifeBack Law Firm, P.A.,

                        Debtor.

## CERTIFICATE OF SERVICE

I, Brandi J. Kasheimer, hereby certify that on May 13, 2024 I caused the following

documents:

1.    Notice of Hearing and Motion for Removal of Debtor In Possession and Other
       Relief;
2.    Supporting Exhibits A-I;
3.    Memorandum in Support of Motion for Removal of Debtor In Possession and Other
       Relief; and
4.    Proposed Order

to be filed electronically with the Clerk of Court through ECF, and that the above documents will

be delivered by automatic e-mail notification pursuant to ECF and this constitutes service or notice

pursuant to Local Rule 9006-1(a).

I further certify that I caused a copy of the foregoing documents to be mailed by First-Class

Mail, postage paid, addressed to the following:

Wesley Scott                                          LifeBack Law Firm, P.A.
3663 74th Street SE                                  13 7th Avenue South
Clear Lake, MN 55319                            Saint Cloud, MN 56301

John D. Lamey, III
Lamey Law Firm, P.A.
980 Inwood Avenue North
Oakdale, MN 55128

and deposited in the U.S. Mail in Minneapolis, Minnesota.

I further certify that I caused a copy of the foregoing documents to be mailed by First-Class Mail, postage paid, to the parties in interest at the addresses set forth in the exhibit, which is attached hereto, and deposited in the U.S. Mail in Minneapolis, Minnesota.

Dated: May 13, 2024                    s/ *Brandi J. Kasheimer*
                                       Brandi J. Kasheimer
                                       Moss & Barnett
                                       150 South Fifth Street, Suite 1200
                                       Minneapolis, MN 55402

2

9295202v1

```
Label Matrix for local noticing          Life Back Law Firm, P.A                Fergus Falls - St Paul
0864-6                                    13 7th Avenue South                   200 Warren E Burger Federal Building and
Case 24-60191                             Saint Cloud, MN 56301-4259            U. S. Courthouse
District of Minnesota                                                           316 N Robert St
Fergus Falls                                                                    St Paul, MN 55101-1495
Mon May 13 10:39:15 CDT 2024

2124 DUPONT, LLC                          3LM CAPITAL PARTNERS LLC              ALERT COMMUNICATIONS
C/O MAVEN CRE                             733 THIRD AVENUE-SUITE 1900           3601 CALLE TECATE
1 EAST 19TH STREET, SUITE 200             NEW YORK NY 10017-3204               SECOND FLOOR CAMARILLO
MINNEAPOLIS MN 55403-3785                                                       CAMARILLO CA 93012-5056


BANK OF AMERICA                           BERKLEY INSURANCE COMPANY             CAMERON LAW OFFICE
PO BOX 982284                             550 WEST JACKSON BLVD                 5353 GAMBLE DRIVE
EL PASO TX 79998-2284                     SUITE 500                             SUITE 300
                                          CHICAGO IL 60661-5781                 MINNEAPOLIS MN 55416-1545


CHRISTINA IRVING                          COMCAST                               DACBLD, LLC (COMMONWEALTH)
C/O MATTHEW TANDE ATTORNEY                ATTN: BANKRUPTCY                      374 SELBY AVENUE
443 OLD HIGHWAY 8 NW STE 208              1701 JFK BOULEVARD                    SAINT PAUL MN 55102-1825
NEW BRIGHTON, MN 55112-3215               PHILADELPHIA PA 19103-2899


GORILLA WEBSTACTICS                       HANOVER INSURANCE GROUP               HIGBEE & ASSOCIATES
3370 N HAYDEN RD 123-660                  95 GLASTONBURY BLVD, SUITE 400        80 SOUTH 8TH STREET STE 900
SCOTTSDALE AZ 85251-6632                  GLASTONBURY CT 06033-4416             MINNEAPOLIS MN 55402-8773


HOGLUND, CHWIALKOWSKI & MROZIK            IRS                                   Internal Revenue Service
1781 WEST COUNTY ROAD B                   PO BOX 932700                         P.O. Box 7346
PO BOX 130938                             LOUISVILLE KY 40293-2700              Philadelphia, PA 19101-7346
SAINT PAUL MN 55113-0019


JALEN BURNS                               JOHN AND ROBIN BISSETTE               KAIN + HENEHAN
1295 NORTHLAND DR STE 250                 1427 109TH AVE NW                     703 W SAINT GERMAIN
SAINT PAUL MN 55120-1373                  COON RAPIDS MN 55433-4212            SAINT CLOUD MN 56301-3534


LAMEY LAW FIRM                            MARGARET HENEHAN                      MARGARET HENEHAN
980 INWOOD AVE N                          3703 34TH AVENUE SOUTH                4509 28TH AVE S
SAINT PAUL MN 55128-6625                  MINNEAPOLIS MN 55406-2736            MINNEAPOLIS, MN 55406-3722


MCDOWALL COMPANY                          METRO SALES, INC                      METRO SALES, INC
1431 PROSPER DR                           1640 E. 78TH STREET                   250 N RIVER RDG CIR., STE 100
WAITE PARK MN 56387-1891                  MINNEAPOLIS MN 55423-4645            BURNSVILLE MN 55337-1612


METRO SALES, INC.                         METRO SALES, INC.                     MINNESOTA DEPT OF REV
14091 BAXTER DR. #116                     2911 CLEARWATER ROAD                  COLLECTION DIVISION
BAXTER MN 56425-8703                      SAINT CLOUD MN 56301-6207            PO BOX 64564
                                                                               SAINT PAUL MN 55164-0564
```

PERRY & PERRY, PLLP
ATTN SHAWN M PERRY ESQ
1650 HIGHWAY 100 SOUTH STE 336
ST LOUIS PARK MN 55416

PICTURES INTERNATIONAL INC
HUDSON BAY CENTRE
2 BLOOR STREET EAST STE 3500
TORONTO ON M4W 1A8 CANADA

QUADIENT LEASING USA INC.
478 WHEELERS FARMS ROAD
MILFORD CT 06461-9105


QUADIENT, INC.
DEPT 3689
PO BOX 123689
DALLAS TX 75312-3689

REPUBLIC
700 40TH AVE NE
SAUK RAPIDS MN 56379-8607

SPECTRUM
PO BOX 94188
PALATINE IL 60094-4188


(p)STERICYCLE  INC
2355 WAUKEGAN ROAD
BANNOCKBURN IL 60015-1503

TAFT, STETTINIUS, HOLLISTER, L
2200 IDS CENTER
80 SOUTH 8TH STREET
MINNEAPOLIS MN 55402-2157

TDS (PHONE)
PO BOX 94510
PALATINE IL 60094-4510


TECH VILLAGE, LLC
DBA EXECUTIVE SUITES, LLC
11 E. SUPERIOR STREET STE #540
DULUTH MN 55802-2089

THE HANOVER INSURANCE GROUP
500 ENTERPRISE DR. STE 4C
ROCKY HILL CT 06067-3913

THIRTEEN-SEVENTH LLP
13 7TH AVENUE SOUTH
SAINT CLOUD MN 56301-4259


U.S. BANK
PO BOX 790448
SAINT LOUIS MO 63179-0448

UPTIME
7500 FLYING CLOUD DRIVE
SUITE 640
EDEN PRAIRIE MN 55344-3715

US ATTORNEY
600 US COURTHOUSE
300 S FOURTH ST
MINNEAPOLIS MN 55415-3070


US Trustee
1015 US Courthouse
300 S 4th St
Minneapolis, MN 55415-3070

WESLEY W. SCOTT
3663 74TH STREET SE
CLEAR LAKE MN 55319-9642

WILLIAM P. KAIN
2003 PLEASANT AVENUE
SAINT CLOUD MN 56303-0224


John D. Lamey III
Lamey Law Firm, P.A.
980 Inwood Ave N
Oakdale, MN 55128-6625

Margaret Henehan
c/o Matthew R. Burton, Moss & Barnett
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402-4138

SAM V CALVERT
1011 2ND STREET N
STE 107
ST CLOUD, MN 56303-3237


Steven B Nosek
Steven B. Nosek, P.A.
2812 Anthony Lane South
Suite 200
St. Anthony, MN 55418-3270

William Kain
c/o Matthew R. Burton, Moss & Barnett
150 South Fifth Street, Suite 1200
Minneapolis, MN 55402-4138


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


STERICYCLE, INC.
2355 WAUKEGAN ROAD
DEERFIELD IL 60015

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)3LM CAPITAL PARTNERS, LLC

(u)Hoglund & Mrozik, PLLC

(u)CHRISTINA IRVING
C/O MATTHEW TANDE ATTORNEY
443 OLD HIGHWAY 8 NW STE 208

(u)CLIENTS

(d)U.S. BANK
PO BOX 790448
SAINT LOUIS MO 63179-0448

End of Label Matrix
Mailable recipients    52
Bypassed recipients     5
Total                  57

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In re:                                                                      BKY Case No.: 24-60191
                                                                                              Chapter 11
LifeBack Law Firm, P.A.,

                            Debtor.

## ORDER

This case is before the Court on the motion of William Kain and Margaret Henehan,

creditors and equity holders of the Debtor, for the removal of debtor in possession and other relief.

Appearances were noted on the record.

Based upon the motion and the file,

**IT IS ORDERED:**

1.      The motion of William Kain and Margaret Henehan is GRANTED.

2.      The Debtor is immediately removed as the debtor in possession.

3.      The Subchapter 5 Trustee is directed to operate the business of the Debtor pursuant

to 11 U.S.C. § 1183(b)(5) together with the other duties provided by that section.

4.      The Subchapter V Trustee's powers are expanded to include the powers specified

in §§ 1106(a)(3) and (4).

BY THE COURT:


Dated:                                        _____
                                              Michael E. Ridgway
                                              United States Bankruptcy Judge

9276438v1